**In The Interest of C.A.B.**

No. 14–08–00360–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 2, 2009.
Rehearing Overruled May 21, 2009.

William M. Thursland, William B. Connolly, William Leslie Shireman, Houston, for appellants.

Sandra D. Hachem, Angela Moritz Craven, Lan T. Nguyen, Houston, TX, for appellees.

Panel consists of Justices FROST, BROWN, and BOYCE.

## OPINION

KEM THOMPSON FROST, Justice.

This case is an accelerated appeal from a trial court's judgment terminating both a

mother's and a father's parental rights to a minor child and granting the child's maternal great-grandparents joint managing conservatorship. The mother and father each claim the evidence is legally and factually insufficient to support the trial court's termination of their parental rights. Each also contests the conservatorship order. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 28, 2007, appellant Aja gave birth to her daughter, C.A.B. (hereinafter "Clara").[1] Shortly after Clara's birth, hospital staff contacted the Texas Department of Family and Protective Services (hereinafter the "Department") to report an incident involving Aja's interaction with Clara. Appellant James, Clara's father, was present during the incident. The Department's report concerning the incident provides in relevant part:

> On March 28, 2007, the [Department] received a report alleging Physical Neglect and Neglectful Supervision of newborn [Clara] (DOB: 3/28/2007) by the child's mother [Aja].... The report went on to state that hospital staff was concerned as to [Aja's] ability to adequately care for the child after observing [Aja] attempting to force the child to consume ice chips shortly after the infant's birth. The report stated that when [Aja] was confronted by hospital staff regarding her behavior, she stated that she was attempting to "shock" the infant in order to see the color of the child's eyes. The report further stated that prior to this incident, [Aja] was observed "trying to pry open" the in-

fant's eyes with her hands in an attempt to see the child's eye color. The report continued by stating that [Aja] informed hospital staff that she had three alter [sic] personalities as part of her dissociative identity disorder. The report concluded by stating that hospital staff at UTMB was also concerned in regard to the child's alleged father, [James], as he did not appear protective of his daughter during these incidents.

Two days later, the Department initiated emergency, temporary custody proceedings. The trial court appointed the Department temporary sole managing conservator of Clara.

Both parents appeared at a hearing on April 12, 2007, during which the trial court appointed the Department as the child's temporary conservator. The trial court ordered both Aja and James to comply with the requirements of any service plan issued during the case. Specifically, the trial court ordered Aja to participate in a psychiatric evaluation and to successfully complete all recommendations. The trial court also ordered both parents to submit to drug tests.[2] The same day, Clara was placed in the physical custody of her maternal great-grandparents, intervenors Betty and Richard. Clara has remained in their care.

Twice, in May 2007 and September 2007, the trial court ordered Aja and James each to comply with additional temporary orders, including completion of the following programs: (1) substance abuse treatment, (2) psychological evaluations and/or participation in counseling, (3) parenting classes, (4) drug and alcohol assessments and com-

---

1. To protect the privacy of the parties in this case, we identify the child by a fictitious name and the parents and great-grandparents by their first names only. *See* TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2008).

2. Evidence indicates that both parents tested positive for narcotics. When a Department caseworker questioned James about testing positive for cocaine use, James admitted he used cocaine, saying he was "stressed out" because the Department removed the child.

pliance with recommendations of the assessments, and (5) random drug tests. The trial court further ordered each parent to remain drug free, refrain from criminal activity, maintain stable housing and employment, and complete all services outlined in the Department's family service plans.[3]

The Department petitioned the trial court to terminate Aja's and James's parental rights to Clara and to grant Betty and Richard joint managing conservatorship of Clara. The Department cited a host of grounds in support of termination. Among these was subsection 161.001(1)(E) of the Texas Family Code, for which the Department alleged that Aja and James each "engaged in conduct or knowingly placed the child with person who engaged in conduct which endangers the physical or emotional well-being of the child."

In March 2008, when Clara was just under one year old, the parties presented evidence at a bench trial on the Department's petition for termination. In its closing argument, the Department argued that the trial court should find that both Aja and James had engaged in the conduct listed in subsections 161.001(1)(E), (N), and (O) and that Aja also had engaged in the conduct under subsection 161.001(1)(A).[4] The trial court found by clear and convincing evidence that both Aja and James had engaged in conduct or knowingly placed the child with persons

who engaged in conduct which endangers Clara's physical or emotional well-being under subsection 161.001(1)(E) of the Texas Family Code.[5] The trial court also found that termination of the parent-child relationship between Clara and her parents is in Clara's best interest. Therefore, the trial court terminated both parents' parental rights. In its decree for termination, the trial court also granted Betty and Richard's request to be appointed joint managing conservators of Clara. In this regard, the court found as follows:

- Appointment of one or both parents as managing conservators would not be in the best interest of Clara because the appointment would significantly impair Clara's physical health or emotional development.
- Appointment of Betty and Richard as Clara's joint managing conservators is in Clara's best interest.
- Dismissing the Department as a party to the suit is in the child's best interest.

At a hearing on James's motion for a new trial, James complained of the sufficiency of the evidence to support the trial court's judgment. The trial court denied this motion.[6] James and Aja now challenge the legal and factual sufficiency of the evidence supporting the trial court's termination of their parental rights and appointment of Betty and Richard as joint managing conservators.

3. The September 2007 orders required completion of no fewer than three random drug tests each month and that each parent maintain stable housing in the same location and employment with the same employer for no less than six months. The September order also required each parent to participate in anger management classes or counseling.

4. *See* TEX. FAM.CODE ANN. §§ 161.001(1)(E), (N), (O), (A) (Vernon 2008) (providing for termination on the following grounds respectively: endangerment, abandonment, failure

to comply with court orders, and leaving the child with no expressed intent to return).

5. Unless otherwise specified, all statutory citations in this opinion are to the Texas Family Code.

6. The record indicates that Aja's motion for new trial was denied before the trial court held a hearing on James's motion for new trial. In her motion Aja also challenged the sufficiency of the evidence.

## II. Issues and Analysis

The Department pleaded numerous grounds for termination under subsection 161.001(1) of the Texas Family Code. Despite the Department's arguments for termination of both parents' rights under subsections 161.001(1)(E), (N) and (O) and, as to Aja, under subsection 161.001(1)(A), the trial court announced at the end of trial that it was terminating Aja's and James's parental rights based only on subsection 161.001(1)(E). Consistent with this pronouncement of judgment, in its written decree for termination, the trial court made the following pronouncement:

### 7. Termination of [Aja's] Parental Rights

7.1 The Court finds by clear and convincing evidence that termination of the parent-child relationship between [Aja] and [Clara] is in the child's best interest.

7.2 Further, the Court finds by clear and convincing evidence that [Aja] has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to subsection 161.001(1)(E) of the Texas Family Code;

7.3 **IT IS THEREFORE ORDERED AND DECREED** that the parent-child relationship between [Aja] and [Clara] is finally and forever terminated.

### 8. Termination of [James's] Parental Rights

8.1 The Court finds by clear and convincing evidence that termination of the parent-child relationship between [James] and [Clara] is in the child's best interest.

8.2 Further, the Court finds by clear and convincing evidence that [James] has engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child, pursuant to subsection 161.001(1)(E) of the Texas Family Code;

8.3 **IT IS THEREFORE ORDERED AND DECREED** that the parent-child relationship between [James] and [Clara] is finally and forever terminated.

As a preliminary matter, we address the Department's argument that, because the trial court did not issue separate findings of fact, as required under Texas Rule of Procedure 299a, the trial court's judgment as to both parents may be affirmed if there is sufficient evidence that would have supported a finding under subsection 161.001(1)(O).[7]

### A. Is there an implied finding under subsection 161.001(1)(O)?

 The trial court did not issue a separate document containing findings of fact or conclusions of law. Under Texas Rule of Civil Procedure 299a, findings of fact should not be recited in a judgment

---

7. To the extent that the Department asserts that the trial court erred by failing to terminate the parental rights of Aja and James based on their engaging in conduct listed under subsection 161.001(1)(O), the Department did not properly preserve this issue by filing a statement of appellate points and a notice of appeal. *See* Tex. Fam.Code Ann. § 263.405(i) (Vernon 2008); *see Prairie View A & M Univ. v. Dickens,* 243 S.W.3d 732, 734 n. 4 (Tex.App.-Houston [14th Dist.] 2007, no pet.); *In re T.T.,* 228 S.W.3d 312, 316–17 (Tex.App.-Houston [14th Dist.] 2007, pet. denied).

but should be filed as a separate document. *See* Tex.R. Civ. P. 299a; *see In re A.A.M.*, No. 14–05–00740–CV, 2007 WL 1558701, at \*3 n. 3 (Tex.App.-Houston [14th Dist.] May 31, 2007, no pet.) (mem. op.). Under this rule, if findings are made in the judgment and they conflict with findings filed separately under Texas Rules of Civil Procedure 297 and 298, then the latter findings control for appellate purposes. *See* Tex.R. Civ. P. 299a. Although the trial court made written findings in its termination decree, these findings were consistent with the findings that the trial court announced at the end of trial, and there were no separate written findings under Rules 297 and 298 that could possibly conflict with the findings. The mere inclusion of findings in a judgment does not mean the findings have no effect. *See In re U.P.*, 105 S.W.3d 222, 229 n. 3 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). If, as in this case, the findings contained in the judgment are not supplanted by findings filed separately under Rules 297 and 298, findings improperly included in a judgment still have probative value and are valid as findings. *See id.* Therefore, we conclude that the trial court made the above-quoted findings regarding the termination of Aja's and James's parental rights.

■ The Department suggests that a finding as to conduct under subsection 161.001(1)(O) should be supplied by presumption under Texas Rule of Civil Procedure 299. *See* Tex.R. Civ. P. 299a. The Department cites *In re J.F.C.*, in which the Supreme Court of Texas held that a best-interest finding in support of a termination decree should be deemed under Rule 279. *See* 96 S.W.3d 256, 262–63, 269–72 (Tex.

2002). This decision does suggest that the "elements" of a termination case are a finding of one of the items listed under subsection 161.001(1) coupled with the best-interest finding under subsection 161.001(2). *See id.* Because there was a jury finding of the former and evidence supporting a finding of the latter, the *J.F.C.* court deemed a finding as to the latter. *See id.* However, in the instant case, the trial court made a finding as to both "elements"; therefore there is no need to supply a finding as to a missing element under Rule 299. We conclude that *In re J.F.C.* does not support the Department's argument.[8] In sum, an express finding of one or more of the items listed in subsection 161.001(1) precludes an implied finding on appeal regarding the items in subsection 161.001(1) as to which the trial court made no express finding. *See Vasquez v. Texas Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 194 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). Accordingly, our sufficiency review for termination of Aja's and James' parental rights is restricted to subsection 161.001(1)(E).

**B. Is the evidence legally and factually sufficient to support termination of the mother's and father's parental rights?**

■ Because termination of parental rights is a drastic remedy, due process and the Texas Family Code require the Department to prove the necessary elements by the heightened burden of proof of "clear and convincing evidence." *See* Tex. Fam.Code Ann. § 161.001 (Vernon 2008); *In re B.L.D.*, 113 S.W.3d 340, 353–54 (Tex. 2003). " 'Clear and convincing evidence' means the measure or degree of proof that

---

8. In addition, even if subsection 161.001(1)(O) were considered an element, the Department requested in its closing argument that the trial court make a finding as to subsection 161.001(1)(O); therefore, this would not be an "unrequested element" subject to a finding by presumption under Rule 299. *See* Tex.R. Civ P. 299.

will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM.CODE ANN. § 101.007 (Vernon 2008). In this case, the Department had to prove by clear and convincing evidence that Aja and James engaged in the conduct specified in section 161.001(1)(E) of the Texas Family Code and that termination of their parental rights is in Clara's best interest. *See* TEX. FAM.CODE ANN. § 161.001; *In re J.L.*, 163 S.W.3d 79, 84 (Tex.2005).

■ In reviewing legal-sufficiency challenges to termination findings, we consider all of the evidence in the light most favorable to the termination findings to determine whether a reasonable factfinder could have formed a firm belief or conviction that these findings are true. *In re J.L.*, 163 S.W.3d at 85. Looking at the evidence in the light most favorable to the findings means that we presume the factfinder resolved disputed facts in favor of its findings if a reasonable factfinder could do so. *Id.* We disregard any evidence that a reasonable factfinder could have disbelieved, but we do not disregard undisputed facts. *Id.*

■ In reviewing the factual-sufficiency challenges to termination findings, we give due consideration to evidence that the factfinder reasonably could have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. The factual-sufficiency inquiry is whether the evidence is such that the factfinder reasonably could form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant

that a factfinder could not reasonably have formed a firm belief or conviction about the truth of the petitioners' allegations, then the evidence is factually insufficient." *Id.* We give due deference to fact findings, and we do not supplant the factfinder's judgment with our own. *See In re H.R.M.*, 209 S.W.3d 105, 108 (Tex.2006).

**1. Is the evidence legally and factually sufficient to support a finding of endangerment under subsection 161.001(1)(E)?**

■ In their first issues, Aja and James each contest the sufficiency of the evidence to support a finding of endangerment under subsection 161.001(1)(E). The trial court found that the Department had proven by clear and convincing evidence that both Aja and James engaged in conduct or knowingly placed Clara with persons who engaged in conduct which endangers Clara's physical or emotional well-being. *See* TEX. FAM.CODE ANN. § 161.001(1)(E). Under subsection 161.001(1)(E), the term "endanger" means the child was exposed to loss or injury or jeopardized. *See Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex.1987).

■■ When analyzing a trial court's findings under subsection 161.001(1)(E) with respect to physical endangerment, we determine whether sufficient evidence exists that the endangerment of the child's physical well-being was the direct result of the parent's conduct, which includes both action or inaction that occurred either before or after the child's birth. *See In re A.S., D.S., & L.A.S.,* 261 S.W.3d 76, 83 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). Endangerment encompasses "more than a threat of metaphysical injury or possible ill effects of a less-than-ideal environment." *Boyd,* 727 S.W.2d at 533. Likewise, although endangerment under subsection 161.001(1)(E) often entails

physical endangerment, the statute does not require that conduct be directed at a child or cause actual harm; rather, it is sufficient if the conduct endangers the emotional well-being of the child. *See id.;* *In re U.P.,* 105 S.W.3d at 233; *Robinson v. Tex. Dep't of Prot. & Reg. Servs.,* 89 S.W.3d 679, 686 (Tex.App.-Houston [1st Dist.] 2002, no pet.). Thus, the court's inquiry encompasses acts that endanger a child's physical or emotional well-being, or both.

■■■■ Termination under subsection 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and conscious course of conduct by the parent is required. *In re J.W.,* 152 S.W.3d 200, 205 (Tex.App.-Dallas 2004, pet. denied). The requisite endangerment may be found if the evidence shows a parent's course of conduct that has the effect of endangering the child's physical or emotional well-being. *See Boyd,* 727 S.W.2d at 534; *Smith v. Sims,* 801 S.W.2d 247, 250 (Tex.App.-Houston [14th Dist.] 1990, no pet.). In considering whether a relevant course of conduct has been established, a court properly may consider evidence of conduct that occurred both before and after a child's birth. *See In re S.T.,* 263 S.W.3d 394, 401–02 (Tex. App.-Waco 2008, pet. denied). In addition, a court may consider evidence establishing that a parent continued to engage in endangering conduct after the child's removal by the Department or after the child no longer was in the parent's care, thus showing the parent continued to engage in the course of conduct in question. *See id.; Smith,* 801 S.W.2d at 249–50.

### a. Endangerment by the Mother under Subsection 161.001(1)(E)

■■■■ Regarding the hospital incident on the day Clara was born, the record contains little or no evidence other than the general statements contained in the Department's report, which appears to have been based on a report from the hospital. None of the hospital staff who observed the incident or contributed to the report testified at trial. Nor did the original case worker who filed the report testify. No evidence was presented regarding Aja's mental health or how any mental health issues might impact her parenting of Clara. Moreover, no expert testified as to any potential harm that could have befallen Clara as a result of Aja's actions in "attempting" to give the baby ice chips. The report does not mention the size of the ice chips or indicate how or whether they might have presented a risk of choking or other harm. There is no evidence as to the quantity of ice chips involved or whether Clara actually consumed the ice. No evidence indicates the manner or force, if any, Aja used in attempting to see her newborn child's eyes. There is no evidence of any intent by Aja to harm the child. In light of the undisputed evidence that Aja's sole motivation was not to harm the child but only to see the newborn's eye color, it would not be reasonable to infer that her actions were intended to cause harm. If any unintended harm resulted, there is no suggestion of it in the record. The Department's report of the hospital incident refers only to Aja's "attempts," and no evidence indicates whether she effectively completed the acts or whether Clara was exposed to any harm, actual or feared, by Aja's actions. No evidence suggests that the child was exposed to any injury or loss or that she was in any manner jeopardized as a result of Aja's conduct at the hospital, especially considering that these actions occurred under the watchful eye of hospital staff. *See Boyd,* 727 S.W.2d at 533. Nonetheless, the Department urges that the rights of the mother as well as the father, who was

present during the incident, may be terminated on this ground alone.

Termination of parental rights is serious business. Because the law demands clear and convincing evidence of facts supporting termination, we cannot terminate a parent's rights based on strong rhetoric alone. Facts and evidence are essential things. Though the Department argues forcefully for the affirmance of the trial court's termination of this mother's rights on endangerment grounds based on this incident in the hospital, the evidence in the record is legally insufficient. Under the applicable standard of review, we conclude no reasonable factfinder could form a firm belief or conviction that Clara's physical or emotional well-being was endangered by Aja's conduct in the hospital. Therefore, on this record, the evidence at trial did not satisfy the clear and convincing standard as to Aja's alleged endangerment of the child in the hospital.[9]

The Department, however, also points to the following evidence in support of termination based on other conduct:

1. Aja's involvement with illegal drug activity, including a 2002 conviction for possession of marijuana, a 2006 conviction for possession of methamphetamines several months before Clara's birth, Aja's positive test for methamphetamines in April 2007 following Clara's birth as reflected by the caseworker's testimony, and Aja's failure to submit to random drug tests after September 2007 in accordance with the trial court's May 2007 and September 2007 orders;

2. Aja's involvement with James, who has been convicted of crimes, including deadly conduct with a knife against her several months before Clara's birth, assault against another family member after Clara's birth, and other illegal drug and alcohol activities before and after Clara's birth;

3. Aja's conviction in October 2007 for a theft that occurred in July 2007, less than two months after the trial court ordered her to refrain from criminal activity;

4. Aja's failure to regularly visit Clara after October 2007, even though Betty and Richard placed no limitations on her visitation with the child; and

5. Aja's departure from the state after indicating that she planned to return to visit Clara every year or two and relinquish her parental rights.

▮ The record contains no evidence that Aja used illegal drugs while pregnant with Clara or that Aja or Clara tested positive for drugs at the time of Clara's birth.[10] Though Aja had a positive drug test two weeks after Clara was placed in the Department's custody, a single incident of drug use while the child is not in the parent's custody does not support an inference of endangerment. See In re A.S., D.S., & L.A.S., 261 S.W.3d at 87 & n. 13 (determining that a mother's one-time use of marijuana while she was pregnant did not amount to endangerment). Evi-

**9.** See Tex. Fam.Code Ann. § 161.001(1)(E); see also In re J.R., 171 S.W.3d 558, 576–78 (Tex. App.-Houston [14th Dist.] 2005, no pet.).

**10.** Furthermore, the Department's own report containing the allegations of the hospital incident also provides that Aja told Department caseworker, Mary Votaw, that her pregnancy limited her medication options prescribed to treat her mental illness. This undisputed evidence undermines any argument that Aja engaged in a course of conduct involving use of illegal drugs that endangered her child's well-being while pregnant. See In re A.S., D.S., & L.A.S., 261 S.W.3d at 87.

dence reflects that Aja tested negative on weekly drug tests from mid-April through September. The caseworker testified that Aja denied current drug use, and the caseworker denied having proof that would suggest otherwise. However, Aja discontinued the court-mandated drug tests after September, citing scheduling and transportation problems. A factfinder reasonably could infer that Aja's failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex.App.-Fort Worth 2003, no pet.).

The Department also points to evidence of Aja's conviction in October 2007, for a theft that occurred in July 2007, for which she was incarcerated for ten days. Aja committed this offense after the trial court previously had ordered her to refrain from criminal activity. At the time of the theft, Aja knew her parental rights were in jeopardy, yet she continued to engage in criminal activity that resulted in being jailed. *See Robinson*, 89 S.W.3d at 687 (citing *In re J.N.R.*, 982 S.W.2d 137, 142 (Tex.App.-Houston [1st Dist.] 1998, no pet.), *disapproved of in part by, In re C.H.*, 89 S.W.3d 17, 26 (Tex.2002), *and by In re J.F.C.*, 96 S.W.3d 256, 267 (Tex.2002)). Aja's commission of the theft offense in July 2007, combined with her two prior convictions for possession of illegal drugs and her positive drug test in April 2007, established clear and convincing proof of a voluntary, deliberate, and conscious course of conduct that endangered Clara's well-being. *See id.* at 686–87. We consider Aja's theft conviction in conjunction with her prior criminal history for the 2006 drug possession charge, in which she served thirty days for possession of methamphetamine several months before Clara's birth. Methamphetamine has potential for abuse and has "addiction-forming liability" as a narcotic. *See Real Property Located at 4125 Blanton, Wichita Falls, Wichita County, Texas, With a Legal Description of Lot 1 Block 4 University Park B1, Wichita County, Texas v. State*, 230 S.W.3d 476, 487–88 (Tex.App.-Fort Worth 2007, pet. denied). Aja's behavior evinces a course of conduct that a factfinder reasonably could conclude endangers Clara's well-being. *See Robinson*, 89 S.W.3d at 687 (concluding that drug use in face of trial court's order to refrain from such acts confirmed voluntary, deliberate, and conscious course of conduct endangering the children's well-being); *Avery v. State*, 963 S.W.2d 550, 553 (Tex.App.-Houston [1st Dist.] 1997, no writ) (stating that imprisonment, alone, cannot be the basis for terminating parental rights and concluding that mother's past criminal conduct and behavior qualified as a voluntary, deliberate, and conscious course of conduct endangering the child's emotional well-being). Under the applicable standard of review, based on the record evidence, a reasonable factfinder could form a firm belief or conviction that Aja's course of conduct endangered Clara's emotional well-being. *See Robinson*, 89 S.W.3d at 687; *In re J.N.R.*, 982 S.W.2d at 142–43 (concluding, under pre-*C.H.* and pre-*J.F.C.* standards of appellate review, that parent's engaging in criminal acts resulting in imprisonment even after knowing his parental rights were in jeopardy, showed that he continued to engage in criminal activity that endangered his child's emotional well-being). Accordingly, on this record, the evidence is legally sufficient to support the trial court's finding that Aja engaged in a course of conduct that endangered Clara's emotional well-being. *See Robinson*, 89 S.W.3d at 687; *In re J.N.R.*, 982 S.W.2d at 142–43. In addition, we conclude that, under the applicable standard of review, the evidence is factually sufficient to support the trial court's finding that Aja engaged in a

course of conduct that endangered Clara's emotional well-being. *See Robinson*, 89 S.W.3d at 687; *In re J.N.R.*, 982 S.W.2d at 142–43. Therefore, we overrule Aja's first issue.

### b. Endangerment by the Father under Subsection 161.001(1)(E)

■ Evidence at trial suggests James was present for the incident at the hospital that prompted the Department to intervene on Clara's behalf. However, based on the facts, as described above, and our evaluation of these facts, no evidence from the hospital incident as shown on this record supports a finding of endangerment that rises to the "clear and convincing" standard. *See* Tex. Fam.Code Ann. § 161.001(1)(E).

■ Nevertheless, other evidence establishes that James has engaged in a course of criminal conduct involving violent actions against a family member and against Aja, a person with whom he shared a dating relationship. James has been convicted and incarcerated for this conduct in the two incidents. Though imprisonment, alone, does not support a finding of endangerment, evidence, including imprisonment, that demonstrates a course of conduct that has the effect of endangering the child's physical or emotional well-being supports a finding of endangerment under subsection 161.001(1)(E). *See Boyd*, 727 S.W.2d at 534; *In re J.W.*, 152 S.W.3d at 205. In one incident occurring on November 19, 2006, James was convicted of misdemeanor deadly conduct with a knife

against Aja, roughly four months before Clara's birth. If a parent abuses the other parent or children, that conduct can support a finding of endangerment even against a child who was not yet born at the time of the conduct. *See In re W.J.H.*, 111 S.W.3d 707, 716 (Tex.App.-Fort Worth 2003, pet. denied). After Clara's birth, James was convicted of criminal assault against a family member in November 2007, by striking that family member with his hand.[11] In this case, evidence shows that James's endangering criminal conduct towards household or family members occurred before Clara's birth and persisted after Clara's birth. *See id.* (considering evidence of abusive conduct toward another parent before the child's birth as supporting a finding of endangerment). These circumstances show a pattern severe enough to demonstrate a course of conduct that presents a danger to Clara's physical and emotional well-being. *See In re N.S.G.*, 235 S.W.3d 358, 367–69 (Tex. App.-Texarkana 2007, no pet.) (involving termination of parental rights of a father who engaged in pattern of conduct severe enough to cause his incarceration, including criminal activity before and after child's birth, "roughing up" of child's mother, and use of illicit drugs); *In re J.N.R.*, 982 S.W.2d at 142 (concluding evidence supported endangerment when father continued to engaged in criminal activity that resulted in his imprisonment even when his parental rights were in jeopardy). As reflected in the record, James was incarcerated not only for these incidents but

---

11. James argues that the criminal records were not relevant, contained hearsay, and did not sufficiently link him to the crimes. In this sufficiency review, to the extent James argues the records should not have been admitted, James did not properly preserve this issue for appeal by filing a statement of appellate points. *See* Tex. Fam.Code Ann. § 263.405(i) (Vernon 2009) (barring an appellate court from considering any issue not specifically presented to the trial court in either a timely filed statement of points the party intends to appeal or such a statement combined with a motion for new trial); *In re T.T.*, 228 S.W.3d 312, 316–17 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Therefore, James has waived this argument. *See In re T.T.*, 228 S.W.3d at 316–17.

also for a number of other charges between 2004 and 2007.

■ Furthermore, evidence in the record indicates that James has not provided for Clara financially, and he had only temporary living arrangements just before his incarceration. " '[C]onduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child.' " *In re N.S.G.*, 235 S.W.3d at 367–68 (quoting *In re R.W.*, 129 S.W.3d 732, 739 (Tex.App.-Fort Worth 2004, pet. denied)). There is ample evidence that James engaged in activities that resulted in uncertainty and instability in Clara's life. *See id.* at 368–69 (providing that evidence that father "roughed up" child's mother, engaged in prior and continued criminal activity, and used illicit drugs were activities that resulted in uncertainty in child's life and led to course of conduct that endangered child); *see also Avery*, 963 S.W.2d at 553 (providing that a mother's past criminal record and behavior showed a conscious course of conduct and instability that occurred before and after child's birth). When considered collectively, evidence of James's abuse towards household or family members, his past and continued criminal activities, as well as his imprisonment supports a finding that James engaged in a course of conduct that endangered Clara's physical and emotional well-being. *See Boyd*, 727 S.W.2d at 533–34; *see also In re N.S.G.*, 235 S.W.3d at 368–69.

Viewing the evidence in the light most favorable to the judgment, a reasonable factfinder could have formed a firm belief or conviction that James engaged in the conduct described in section 161.001(1)(E). *See In re N.S.G.*, 235 S.W.3d at 367–69 (concluding evidence was legally and factually sufficient to support finding of endangerment because father persisted in criminal activity before and after child's birth,

abused child's mother, and used illicit drugs). Therefore, under the applicable standard of review, the evidence is legally sufficient to support the trial court's finding that James engaged in a course of conduct that endangered Clara's physical or emotional well-being. *See id.* Under the applicable standard of review, we conclude the evidence is factually sufficient to support the trial court's finding that James engaged in a course of conduct that endangered Clara's physical or emotional well-being. *See In re M.R.*, 243 S.W.3d at 819; *In re N.S.G.*, 235 S.W.3d at 367–69. Therefore, we overrule James's first issue.

**2. Is the evidence legally and factually sufficient to support a finding that termination of the parents' parental rights is in the best interest of the child?**

■ In their second issues, Aja and James each challenge the sufficiency of the evidence to support the trial court's findings that termination of Aja's and James's parental rights is in Clara's best interest. In reviewing the sufficiency of the evidence to support a best-interest finding, we examine a number of factors, including (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody in promoting the best interest of the child; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent which may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976). A finding in support of "best interest" does not require proof of any unique set of

factors, nor does it limit proof to any specific factors. *Id.*

No evidence suggests Clara has any special needs and, at one year old, her desires cannot be determined. *See In re N.S.G.,* 235 S.W.3d at 369 (involving a twenty-two month child at time of trial). Neither Aja nor James has provided for the child's needs nor have they offered her an opportunity for a stable, permanent living environment. James had only temporary living arrangements before his incarceration. Evidence in the record suggests that Aja had temporary living arrangements with James's mother, Elaine. The trial court's May 2007 and September 2007 orders required each parent to maintain stable housing in the same location and stable employment with the same employer for six months; however, the evidence does not suggest that either parent complied. *See In re J.F.C.,* 96 S.W.3d at 269, 277–78 (considering failure to substantially comply with family service plan as evidence favoring termination and in child's best interest); *see also White v. Tex. Dep't of Family & Prot. Servs.,* No. 01–04–00221–CV, 2005 WL 174546, at *6 (Tex.App.-Houston [1st Dist.] Jan. 27, 2005, no pet.) (mem.op.) (supporting best-interest determination based on evidence that parents failed to find stable housing). Evidence at trial reflected that Aja did not substantially complete the family service plan ordered by the trial court to effect reunification with Clara. Although Aja completed the initial drug and alcohol assessment and began drug testing, she ended the drug tests in September and did not complete any other requirements of the family service plan. She indicated to the caseworker in November 2007 that she refused to complete the service plan and felt her attempts to complete the plan were in vain when the trial court ordered that Clara remain with Betty and Richard instead of placing Clara with James's mother. Evidence reflects

Aja consistently visited Clara at the Department's offices twice monthly between April and September 2007. However, evidence indicates that the Department, in October 2007, permitted Betty and Richard to allow Clara visitation with her parents; Betty and Richard placed no limits on the number or length of these visits. Notwithstanding this generous visitation arrangement, Aja visited Clara only three times for only a couple of hours. Evidence reflects that at the time of trial, Aja lived in Mississippi and, knowing that the child was in Betty and Richard's care, expressed a desire to return to visit Clara once "every year or two."

No evidence indicates that Aja is employed, but Betty indicated Aja was capable of employment. Aja has not provided for Clara's emotional or physical needs beyond purchasing some clothes and a toy. Aja requested that Betty continue to provide a stable home, education, and religious upbringing for Clara. The caseworker and Betty both confirmed that prior to trial Aja expressed a desire to relinquish her parental rights.

Evidence in the record shows that while James visited Clara regularly for several months while she was in the Department's custody, these visits stopped in September 2007. James was incarcerated in November 2007, and released just before the termination proceedings commenced. James did not appear at the termination proceedings, nor has he indicated that he has any plans for Clara's future, as demonstrated by his failure to complete the requirements of the family service plan ordered by the trial court. Specifically, he did not complete parenting classes or anger-management counseling. James admitted to the caseworker that he tested positive for drugs after Clara's birth, explaining this substance abuse occurred because of his need to relieve stress brought

on when Clara came into the Department's care.[12]

Testimony from the child advocate indicated that Clara seemed to be in a good environment with Betty and Richard and has lived with them since she was less than one month old. They are the only caregivers Clara has known. *See N.S.G.*, 235 S.W.3d at 365 (involving child who lived with caregivers starting at five days old). According to the child advocate, Clara has bonded with both Betty and Richard, who have indicated a willingness to continue to provide emotional, financial, and physical care for Clara now and in the future. The child advocate testified that Betty and Richard had a supportive infrastructure of friends who showered them with gifts for Clara. The child is thriving in their care, and they want to adopt her.

Giving due consideration to the evidence, the trial court reasonably could have formed a firm belief or conviction about the truth of its findings that termination of James's and Aja's parental rights is in Clara's best interest. *See In re N.S.G.*, 235 S.W.3d at 369–70 (concluding evidence was legally and factually sufficient to support a best-interest finding for child who was five days old when placed in care of others and was twenty-two months old at trial); *In re S.B.*, 207 S.W.3d 877, 887–88 (Tex.App.-Fort Worth 2006, no pet.) (concluding evidence was factually sufficient to support best-interest findings based on parent's inability to provide stable home and failure to comply with family service plan). Therefore, we overrule Aja's and James's respective second issues.

Given the disposition of the first two issues, we do not reach their respective third issues, in which Aja and James challenge the conservatorship of the child.

## III. CONCLUSION

Under the applicable standards, the evidence is both legally and factually sufficient to support the trial court's findings regarding termination of Aja's and James's parental rights. Therefore, we affirm the trial court's termination of both parents' parental rights.

---

12. The caseworker testified to her knowledge of James's two positive drug tests during the pendency of the termination proceedings and to her conversation with James following these tests, in which he admitted cocaine use.