**Affirmed and Memorandum Opinion filed January 29, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00759-CV

## IN THE INTEREST OF Z.J.B., A CHILD

**On Appeal from the 314th District Court
Harris County, Texas
Trial Court Cause No. 2017-03930J**

# MEMORANDUM OPINION

Appellant T.C.B. ("Father") appeals the trial court's final decree terminating his parental rights with respect to his one-year-old child Z.J.B. ("Zoe").[1] The trial court terminated Father's parental rights on predicate grounds of endangerment, abandonment, and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (N), (O) (Supp.). The trial court further found that termination of Father's rights was in Zoe's best interest. In four issues, Father challenges the legal and factual sufficiency of the evidence to support

---

[1] Zoe is a pseudonym. Pursuant to Texas Rule of Appellate Procedure 9.8, we use fictitious names to identify the minors involved in this case. *See* Tex. R. App. P. 9.8.

the trial court's findings on each predicate ground, as well as the best interest finding. Father does not challenge the appointment of the Texas Department of Family and Protective Services ("the Department") as Zoe's managing conservator. Because we conclude the evidence is legally and factually sufficient to support the trial court's findings, we affirm the judgment.

## BACKGROUND

### I.    Pretrial Proceedings

Zoe was born to her mother ("Mother") and Father in early summer 2017.

The Department filed an original petition in July 2017 seeking the termination of Mother's and Father's parental rights with respect to Zoe. The Department attached to its original petition the affidavit of Ashley Griffin-Jones, the investigator assigned to Zoe's case.[2]

According to Griffin-Jones's affidavit, the Department received a report alleging that Mother negligently supervised and physically abused Zoe. The report indicated that there was "significant concern" for Zoe's safety and welfare "based on the homicide of [Mother's] 1-year-old son in 2016 for which [Mother] is currently believed to be responsible." The report stated that Mother was on bond in connection with the murder case and recently had her parental rights terminated with respect to her other two children.

Griffin-Jones states that the autopsy performed on Mother's deceased son showed that the child "suffered multiple significant injuries of varying ages which

---

[2] Although filed with the trial court, Griffin-Jones's affidavit was not admitted into evidence at trial. We presume the trial court took judicial notice of its record without any request being made and without any announcement that it has done so. *See In re K.F.*, 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied); *see also In re A.N.*, No. 02-14-00206-CV, 2014 WL 5791573, at *14 n.29 (Tex. App.—Fort Worth Nov. 6, 2014, no pet.) (mem. op.).

could only be attributed to inflicted non-accidental blunt force trauma." Mother also admitted to striking the child in anger. A review of the Department's records showed that Mother previously admitted to marijuana use during prior pregnancies and had an ongoing history of domestic violence with the father of her other children. Law enforcement officers told Griffin-Jones that they previously had responded to Mother's residence due to service calls reporting domestic violence between Mother and Father.

Griffin-Jones's affidavit details her attempts to contact Mother and Zoe at Mother's residence. Griffin-Jones states that Mother and Father gave her "evasive and deceptive" responses and "initially maintained that [Zoe] was with a relative but could not provide an address." Mother and Father admitted that Zoe was present at Mother's residence only when law enforcement officers responded to the scene.

The trial court granted a temporary order placing Zoe in the Department's conservatorship. After holding an adversary hearing, the trial court signed an order on August 17, 2017, continuing the Department's appointment as Zoe's temporary managing conservator. The trial court's order also required Mother and Father to comply with the Department's family service plan. *See generally* Tex. Fam. Code Ann. § 263.102 (Supp.). The Department's family service plan required both Mother and Father to complete periodic drug screenings.

Father completed a drug screening on August 17, 2017. The drug screening returned positive results for cocaine and marijuana. Father did not appear for three additional drug screenings.

## II.     Trial

The parties proceeded to a bench trial on June 21, 2018. Father's attorney requested a continuance, stating that Father "was in an automobile accident

3

involving an 18 wheeler and is currently under medication and not able to attend." In response to questioning from the trial court, Father's attorney acknowledged that Father did not reach out to his attorney about his inability to attend the June 21, 2018 bench trial; rather, Father's attorney initiated contact with Father. Father's attorney also stated that Father was not at a hospital but was at his house. The trial court, noting that Father previously failed to attend two hearings and failed to contact his attorney about those hearings, denied Father's request for a continuance.

Zoe's caseworker, Claudia Riggins, testified at trial that Father's August 2017 drug screening returned positive results for marijuana and cocaine; Father did not attend three additional drug screenings scheduled from September 2017 through April 2018; Father had two previous convictions for assault (which occurred in 2003 and 2005); and Father has not kept in contact with the Department. Further, Riggins stated:

> "I call and text once a month in order to try to meet with him. He has hung up on me on multiple occasions and he does not reply to — respon[d] via mail, text or phone call."

Riggins stated that Father did not maintain any significant contact with Zoe and did not contact the Department to inquire about Zoe.

Riggins testified that Zoe had resided with a relative caregiver for "almost a year" and that Zoe is "very close" to the caregiver. Riggins stated further that Zoe is "really well adjusted" and that she has "no concerns about the placement." Riggins testified that the caregiver provides Zoe with a stable environment and that this caregiver also is in the process of becoming a licensed foster parent.

Riggins testified that she believed it was in Zoe's best interest to terminate Mother's and Father's parental rights. Riggins stated that, if Mother's and Father's parental rights are terminated, the Department's long-term plan is for the caregiver

to adopt Zoe.

Tiffany Ellis, the Child Advocates coordinator for Zoe's case, also testified at trial. Ellis described Zoe's bond with her caregiver as "[v]ery intimate" and said the caregiver was taking care of all of Zoe's needs. Ellis did not have any concerns about the caregiver's ability to meet Zoe's future needs.

Ellis testified that Father had not reached out to Child Advocates with respect to Zoe's case and had not responded to Child Advocates' attempts to contact him. According to Ellis, Child Advocates recommended that Mother's and Father's parental rights be terminated.

Lisa McCartney, an expert in children's safety, permanency, and well-being, was the last witness to testify at trial. McCartney concurred with the other witnesses' recommendations that Mother's and Father's parental rights with respect to Zoe be terminated. McCartney was "involved in the other case involving Mother's other children" and testified that Mother has a "pattern of behavior of physically abusing children." McCartney testified that Father "knew about [Mother's] other children" but "had no concerns" about Mother caring for Zoe. McCartney also discussed the July 2017 incident when Mother and Father attempted to hide Zoe from investigator Griffin-Jones. McCartney concluded that Zoe's reunification with Mother or Father "would be a source of endangerment[.]"

At the close of evidence, the trial court granted the Department's request to terminate Mother's and Father's parental rights with respect to Zoe. The trial court signed a "Final Decree of Termination" on August 6, 2018, terminating Father's parental rights on predicate grounds of endangerment, abandonment, and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (N), (O). The trial court also concluded that the termination of

5

Father's parental rights was in Zoe's best interest. *See generally id.* at (b)(2). Father timely appealed.

STANDARDS OF REVIEW

The involuntary termination of parental rights implicates fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Because of the severity and permanency of terminating the parental relationship, Texas requires clear and convincing evidence to support such an order. *See generally* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265-66 (Tex. 2002).

Father challenges on appeal the legal and factual sufficiency of the evidence supporting the trial court's order terminating Father's parental rights pursuant to Texas Family Code section 161.001(b). Section 161.001(b) permits the termination of a parent-child relationship if the trial court finds by clear and convincing evidence that (1) one or more predicate acts enumerated in section 161.001(b)(1) was committed, and (2) termination is in the best interest of the child. "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007; *In re J.F.C.*, 96 S.W.3d at 264.

Reviewing Father's legal sufficiency challenge under the clear-and-convincing evidentiary standard, we "should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). We assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so, and we disregard all evidence that a reasonable fact finder could have disbelieved. *In re G.M.G.*, 444

6

S.W.3d 46, 52 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we do not substitute our judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d. 105, 108 (Tex. 2006) (per curiam).

**ANALYSIS**

Father asserts that the evidence is legally and factually insufficient to support the trial court's predicate termination findings with respect to endangerment, abandonment, and failure to comply with the service plan for reunification. *See generally* Tex. Fam. Code Ann. § 161.001(b)(1)(E), (N), (O). Father also challenges the trial court's finding that termination of his parental rights was in Zoe's best interest. We address these challenges below.

I.      **Predicate Termination Findings**

The trial court made predicate termination findings pursuant to Texas Family Code section 161.001(b)(1)(E), (N), and (O). Under section 161.001(b)(1), parental rights may be terminated if the fact finder finds by clear and convincing evidence that the parent has (*inter alia)*:

> "(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;
>
> \*              \*              \*
>
> (N) constructively abandoned the child who has been in the permanent

7

or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and

> (i) the department has made reasonable efforts to return the child to the parent;

> (ii) the parent has not regularly visited or maintained significant contact with the child; and

> (iii) the parent has demonstrated an inability to provide the child with a safe environment; [or]

(O) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for abuse or neglect of the child[.]"

*Id*. Only one predicate finding under section 161.001(b)(1) is necessary to support a judgment of termination when there also is a finding that termination is in the child's best interest. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). We address the trial court's endangerment finding under subsection 161.001(b)(1)(E).

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failure to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A child is endangered when the environment creates a potential for danger of which the parent is aware but disregards. *In re S.M.L.*, 171 S.W.3d at 477. Termination under subsection (E) must be based on more than a single act or omission — the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

While endangerment under subsection (E) often involves physical endangerment, the statute does not require that the conduct be directed at a child or that the child actually suffer physical injury; rather, the specific danger to the child's well-being may be inferred from the parent's misconduct alone. *See In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see also Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) ("'[E]ndanger' means to expose to loss or injury; to jeopardize"). As a general rule, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re J.O.A.*, 283 S.W.3d at 345. This satisfies this subsection's requirement of endangering the emotional well-being of the child.

Incarceration of a parent alone will not support termination, but evidence of past and continuing endangering criminal conduct, convictions, and imprisonment may support a finding of endangerment. *See In re C.A.B.*, 289 S.W.3d at 886. Likewise, "[d]omestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

A parent's decision to engage in illegal drug use during the pendency of a termination suit may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *See In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414, at *7 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.). "Additionally, a fact finder reasonably can infer that a parent's failure to submit to court-ordered drug tests indicates the parent is avoiding testing because they were using illegal drugs." *In re E.R.W.*, 528 S.W.3d 251, 265 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Here, Father asserts that the evidence does not support the finding that he endangered Zoe. We disagree.

The record establishes a voluntary, deliberate, and conscious course of

conduct by Father that endangered Zoe's emotional well-being (and likely her physical well-being also). *See In re C.A.B.*, 289 S.W.3d at 883; *In re S.M.L.*, 171 S.W.3d at 477. Father tested positive for illegal drugs in August 2017 and failed to attend three additional drug screenings scheduled during the pendency of the underlying action, suggesting that Father continued to use illegal drugs. *See In re E.R.W.*, 528 S.W.3d at 265. The evidence shows that Father had two previous convictions for assault; Griffin-Jones's affidavit also states that law enforcement officers told her they previously responded to service calls at Mother's residence reporting domestic violence between Mother and Father. This evidence of illegal drug use, criminal conduct, and domestic violence supports a finding of endangerment. *See In re E.R.W.*, 528 S.W.3d at 264-65; *In re C.A.B.*, 289 S.W.3d at 886; *In re J.I.T.P.*, 99 S.W.3d at 845.

In addition to his continuous illegal drug use and criminal behavior, Father's demonstrated lack of concern for Zoe's well-being is further evidence of endangerment. *See In re S.M.L.*, 171 S.W.3d at 479. Father failed to attend two hearings and the trial adjudicating his parental rights; the record does not show that he took any substantial or proactive steps to inform the trial court or his attorney of the reasons for these failures. Father did not maintain any contact with Zoe or the Department and avoided the Department's attempts to communicate with him. Father also did not reach out to Child Advocates with respect to Zoe's case and did not respond to Child Advocates' attempts to contact him.

Father argues in his appellate brief that "[t]he allegations were against [Mother] and not [Father], as he is the non-offending parent." While true with respect to specific allegations, the record also contains uncontested evidence of Father's continuous drug use, criminal behavior, and lack of concern for Zoe's well-being. When viewed in the light most favorable to the trial court's finding, this

10

evidence is sufficient to support the trial court's determination that termination of Father's parental rights was justified under section 161.001(b)(1)(E) of the Family Code. *See In re J.O.A.*, 283 S.W.3d at 344. Further, in view of the entire record, we conclude the disputed evidence is not so significant as to prevent the trial court from forming a firm belief or conviction that termination was warranted under section 161.001(b)(1)(E). *See id.* at 345. The evidence therefore was factually sufficient to support the trial court's section 161.001(b)(1)(E) finding. *See id.* We overrule Father's challenge to this finding.

## II.      Best Interest of the Child

Father also challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of his parental rights is in Zoe's best interest.

The fact finder may consider the following factors to determine the best interest of the child: (1) the desires of the child; (2) the present and future physical and emotional needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the persons seeking custody; (5) the programs available to assist those persons seeking custody in promoting the best interest of the child; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) acts or omissions of the parent that may indicate the existing parent-child relationship is not appropriate; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *see also* Tex. Fam. Code Ann. § 263.307(b) (Supp.) (listing factors to consider in evaluating parents' willingness and ability to provide the child with a safe environment); *In re E.R.W.*, 528 S.W.3d at 266.

Courts apply a strong presumption that the best interest of the child is served by keeping the child with her natural parents and the burden is on the Department to

rebut that presumption. *In re D.R.A.*, 374 S.W.3d at 531. Prompt and permanent placement in a safe environment is also presumed to be in the child's best interest. Tex. Fam. Code Ann. § 263.307(a).

Multiple factors support the trial court's finding that termination of Father's parental rights is in Zoe's best interest, particularly when viewed in the light most favorable thereto.

## A. Desires of the Child

Zoe was approximately one-year-old at the time of trial in July 2018 and had been living with her caregiver for most of her life. The record therefore does not reflect Zoe's desires. When children are too young to express their desires, the fact finder may consider whether the children have bonded with their caregiver, are well-cared for by them, and have spent a minimal amount of time with their parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

Testimony at trial showed that Zoe had bonded with her caregiver and that the Department's long-term plan was for the caregiver to adopt Zoe. Riggins and Ellis described Zoe's relationship with her caregiver as "very close" and "very intimate;" neither witness had any concerns about the caregiver's ability to care for Zoe and provide her with a stable environment.

Despite Father's assertions that Zoe is presumed bonded with her father, the record does not support this contention. Uncontested evidence shows that Father did not maintain contact with Zoe and avoided the Department's efforts to communicate with him during the course of the underlying proceeding. Father failed to attend two hearings and the trial adjudicating his parental rights. Father did not provide any explanation for his failure to stay in contact with Zoe.

This factor supports the trial court's finding that termination of Father's rights

is in Zoe's best interest.

## B. Present and Future Physical and Emotional Needs of the Child

Our analysis of the present and future physical and emotional needs of a child focuses on a child's innate need for permanence. *See In re D.R.A.*, 374 S.W.3d at 533. The goal of establishing a stable, permanent home for a child is a compelling government interest. *See id.*

The record reflects that Father has been mostly absent from Zoe's life. Father did not provide any explanation for his absence. From this past inability to be present and to meet Zoe's physical and emotional needs, the fact finder may infer that Father is unable or unwilling to meet these needs in the future. *See In re J.D.*, 436 S.W.3d at 118.

Father's assertions that it is "speculative" whether Zoe's future physical and emotional needs will be met by her caregiver is contrary to the record. Riggins testified that she has no concerns about Zoe's placement with her caregiver and stated that the Department's long-term plan is for the caregiver to adopt Zoe. Ellis testified that Zoe's bond with her caregiver is "[v]ery intimate" and said the caregiver was taking care of all of Zoe's needs, and was in the process of certification to become a licensed foster parent.

This factor supports the trial court's best interest finding.

## C. Acts or Omissions of the Parent that May Indicate the Existing Parent-Child Relationship is Not Appropriate

Father's drug use and his absence from Zoe's life also support the trial court's best interest determination. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (parent's history of drug use relevant to trial court's best interest finding); *see also In re S.R.*, 452 S.W.3d at 366 (the fact finder may infer

13

from past conduct endangering the child's well-being that similar conduct will recur if the child is returned to the parent).

The record shows that Father failed an initial drug screening and failed to complete three scheduled drug screenings during the pendency of the underlying suit to terminate parental rights. Additionally, Father has not been present for most of Zoe's life. This factor (along with the others previously discussed herein) weighs in favor of the trial court's best interest finding.

### D. Parental Abilities of Those Seeking Custody, and Stability of the Home or Proposed Placement

The factors concerning the parental abilities of those seeking custody, and the stability of the home or proposed placement compare the Department's plans and proposed placement of the child with the plans and home of the parent seeking to avoid termination. *See In re D.R.A.*, 374 S.W.3d at 535.

Riggins stated that the Department's long-term plan was for Zoe to be adopted by her caregiver. Riggins testified that she had no concerns about Zoe's placement with her caregiver, and that the caregiver was in the process of becoming a licensed foster parent. In her testimony, Ellis similarly stated that Zoe's caregiver was taking care of all of Zoe's needs and that Ellis did not have any concerns.

On the other hand, the record does not contain any evidence suggesting that Father would be able to provide long-term care for Zoe. This consideration, combined with Father's failure to attend the underlying proceedings and maintain contact with Zoe, strongly supports the trial court's best interest determination.

Viewing the evidence in the light most favorable to the judgment for our legal sufficiency analysis and all the evidence equally for our factual sufficiency analysis, we conclude that a reasonable fact finder could have formed a firm belief or conviction that termination of Father's parental rights was in Zoe's best interest. *See*

14

Tex. Fam. Code Ann. § 161.001(b)(2). We overrule Father's challenge to this finding.

## CONCLUSION

The evidence is legally and factually sufficient to support the trial court's predicate termination finding under section 161.001(b)(1)(E). The trial court's best interest finding is also supported by legally and factually sufficient evidence. We overrule Father's challenges and affirm the trial court's "Final Decree of Termination."


/s/    Meagan Hassan
Justice


Panel consists of Justices Christopher, Hassan, and Poissant.