# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00593-CV

**Bridgett Henties, Appellant**

**v.**

**James Schweppe, Administrator for the Estate of Michael L. Henties, Deceased, and Trustee of the Michael L. Henties Estate Trust, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 433RD JUDICIAL DISTRICT NO. C2011-0810D, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The disputed issue in this appeal is the ownership of a piece of real property (the Property) located in Comal County, Texas. After James Schweppe, as administrator of the Estate of Michael L. Henties and as trustee of the Michael L. Henties Estate Trust (the Estate), filed a notice of lis pendens giving notice of a potential dispute over ownership of the Property, Bridgett Henties filed suit in district court seeking a declaration that she owned the property in fee simple. In her suit, she asserted causes of action for trespass to try title, to quiet title, and for breach of contract against the Estate. The Estate filed counter-claims for declaratory relief and for damages pursuant to the Theft Liability Act. After a bench trial, the court rendered judgment for the Estate. Bridgett[1] perfected this appeal and in six issues challenges the trial court's judgment. Most of her six issues

---

[1] Because Bridgett Henties and Michael Henties share a surname, for clarity we will refer to them by their given names.

reduce in essence to legal and factual sufficiency challenges to the trial court's judgment. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Bridgett and Michael married in 2002 and resided in Cincinnati, Ohio. Approximately two years after they married, they purchased the Property located in Comal County, Texas, intending to one day build a retirement home there. Michael was later diagnosed with lung cancer and died in January 2010. After Michael's death, certain unidentified disputes arose between Bridgett and the Estate. The disputes were settled by execution of a Settlement Agreement in January 2011. Thereafter, in May 2011, Bridgett filed in the Comal County deed records what purported to be a Quitclaim Deed executed by Michael on May 8, 2009, conveying to Bridgett all of his rights, title, and interest in the Property. Doubting the validity and authenticity of the Quitclaim Deed, the Estate filed a notice of lis pendens in Comal County giving notice of a dispute of ownership or property rights concerning the Property. That prompted Bridgett to file this suit, which at the time of trial included the following:

- a request for declarations that: (1) she had superior title to the Property as evidenced by the Quitclaim Deed, (2) she owned the Property in fee simple, (3) the Estate's claims to the property were unenforceable and invalid, and (4) any claims to the Property were foreclosed by the January 2011 Settlement Agreement;

- an action for trespass to try title and a petition to quiet title and remove a cloud on title arising out of the notice of lis pendens;

- a claim that the Estate breached the January 2011 Settlement Agreement by filing the notice of lis pendens;

2

- a request that the notice of lis pendens be expunged; and

- a request for attorneys' fees.

The Estate filed a general denial along with a request for a declaration that the Quitclaim Deed was invalid and that one-half of the Property belonged to the Estate. The Estate also sought actual and statutory damages and attorneys' fees pursuant to the Theft Liability Act. *See* Tex. Civ. Prac. & Rem. Code §§ 134.001-.005.

The case was tried to the court. In support of her claim to have title to the Property, Bridgett relied on the Quitclaim Deed dated May 8, 2009, which she claimed Michael signed in a restaurant in El Paso, Texas. The Quitclaim Deed, which for unknown reasons bears the logo of the Texas Department of Transportation in the upper left-hand corner, recites as follows:

> That, Michael L. Henties of 8919 Terwilliger's Trail, Cincinnati OH 45249, hereinafter referred to as THE GRANTOR(S), for and in consideration of the sum of TEN AND NO/100 DOLLARS ($10.00) cash and other good and valuable consideration to it in hand paid by Bridgett Baez Henties, the GRANTEE, the receipt of which is hereby acknowledged, and for which no lien is retained, either expressed or implied, have Quitclaimed and do by these presents Bargain, Sell, Release and forever Quitclaim unto the State of Texas all of Grantors' rights, title, interest, claim and demand in and to that certain tract or parcel of land, situated in the County of Comal, State of Texas, conveys and quit claims to Bridgett Baez Henties, of 8919 Terwilliger's Trail, Cincinnati OH 45249, the GRANTEES(S), the following described parcel of land or real estate, situated in the County of Comal, State of Texas, together with all after acquired title of the Grantor(s) therein (legal description):
>
> Lot 1348, MYSTIC SHORES, UNIT ELEVEN, according to map or plat recorded in Volume 15, Pages 40-49, Comal County, Texas Map and Plat Records.
>
> **TO HAVE AND TO HOLD** for said purposes together with all and singular the rights, privileges, and appurtenances thereto in any manner belonging unto the said

State of Texas forever.  Executed on the 8th day of May, 2009, date of the acknowledgment, and effective on the 8th day of May, 2009.

**GRANTOR:**_____[signature]_____
            [handwritten "Michael L. Henties"]

**IN WITNESS WHEREOF**, this instrument is executed on this the 8th day of May, 2009

_____Hilda Elena Carrasco_____                    _____[signature]_____

_____Cynthia Bernal_____                    _____[signature]_____

_____Regina Allemang_____                    _____[signature]_____

The Quitclaim Deed also included the acknowledgment of Notary Public Martha A. Ayala, which stated:  "This instrument was acknowledged before me on this 8th day of May 2009 by Michael Henties."  The Deed was witnessed by Hilda Elena Carrasco, Cynthia Bernal, and Regina Allemang.  Carrasco is Bridgett's sister, and Bernal and Ayala are friends of Carrasco's.

Bridgett testified that the signature on the Quitclaim Deed was Michael's.  The undisputed evidence at trial was that Michael was admitted to a hospital in Cincinnati, Ohio, for lung surgery on May 4, 2009, and was discharged from the hospital on May 7, 2009, with a chest incision that was expected to drain and a chest dressing that needed to be changed regularly.  Bridgett testified that, although she did not know how he got there, Michael was in El Paso, Texas, the following day, May 8, 2009, and signed the Quitclaim Deed there.  Bridgett testified that it was not uncommon for Michael to go on long trips immediately following a release from the hospital.  Bridgett agreed that Michael's Chase credit card and American Express card activity included no charges related to travel, lodging, meals, rental car, or airline tickets that would indicate that Michael

4

had traveled to El Paso on May 7 or 8, 2009. Michael's Chase credit card was, however, used at a Speedway store in Cincinnati, Ohio, on May 9, 2009. Bridgett testified that she and her two daughters had charging privileges on the Chase credit card. Bridgett also testified that the signature on the Quitclaim Deed matched Michael's signature on his hospital discharge papers.

Martha Ayala, the notary public who notarized Michael's signature on the Quitclaim Deed, testified that she did not know either Bridgett or Michael before May 8, 2009. Ayala testified that she did not remember notarizing the Quitclaim Deed and that she no longer had her notary book because it was in her vehicle when it was stolen in Juarez, Mexico in the summer of 2011.

Carrasco testified that Michael called her early in the afternoon of May 8, 2009, and that she met him between four and six o'clock that afternoon. They met at a restaurant in northeast El Paso called La Paloma. Carrasco brought Bernal with her and met Michael and Ayala at the restaurant. They stayed at the restaurant for 20 to 30 minutes. Carrasco said she did not ask, and did not know, why Michael had traveled to El Paso to sign a document he could have signed in Ohio. Carrasco testified that she was not sure who Regina Allemang was but believed she was someone at the restaurant. Carrasco testified she believed that Michael brought the typed Quitclaim Deed with him, but she could not explain how the names of the witnesses could have already been typed on the document when no one had ever met Allemang before, and Michael could not have known in advance the name of a bystander who would be asked to witness his signature.

After trial, the court rendered judgment in the Estate's favor. Declaring the Quitclaim Deed to be forged and invalid, the court expunged it and also declared that the Estate owns a one-half undivided interest in the Property. The court awarded the Estate statutory damages of

5

$1,000, $57,933.50 for reasonable and necessary attorneys' fees, and $2,144.48 for court costs. *See id.* § 134.005(a)(1), (b). Bridgett filed a motion for new trial, which was overruled by operation of law. Bridgett also filed a request for findings of fact and conclusions of law. When the trial court did not enter findings and conclusions, Bridgett filed a notice of past due findings of fact and conclusions of law and perfected this appeal.

## DISCUSSION

The trial court found that Michael did not sign the Quitclaim Deed and that his signature thereon was forged. This finding was included in the trial court's final judgment rather than in separately filed findings of fact and conclusions of law. In her first issue, Bridgett complains that including findings in the judgment was "improper" and, consequently, "cannot support the trial court's ruling on appeal." *See* Tex. R. Civ. P. 299a ("Findings of fact shall not be recited in a judgment. If there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes. Findings of fact shall be filed with the clerk of the court as a document or documents separate and apart from the judgment."). We understand Bridgett to argue that the findings of fact set forth in the judgment are a nullity, and the absence of an express finding that Michael did not sign the Quitclaim Deed requires rendition of judgment in her favor.

In the present case, the findings contained in the judgment, though technically in violation of Rule 299a, still have probative value and are valid as findings. *See In re C.A.B.*, 289 S.W.3d 874, 881 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Moreover, the absence of separately filed findings of fact and conclusions of law has not harmed Bridgett because it is obvious

that the trial court ruled against Bridgett because it found that Michael did not sign the Quitclaim Deed and that his signature on it was forged. Bridgett need not speculate here about the reason the trial court ruled against her; in fact, she challenges this very ruling in her fourth appellate issue. We overrule Bridgett's first issue.

In her fourth appellate issue, Bridgett challenges the legal and factual sufficiency of the evidence supporting the trial court's findings that Michael did not sign the Quitclaim Deed and that his signature thereon was forged. In her fifth issue, Bridgett claims that, because the evidence is insufficient to support that finding, she is entitled to judgment on her suit to quiet title. Bridgett was the plaintiff in this suit in which she sought confirmation that she was the owner of the property because Michael had conveyed it to her in the Quitclaim Deed. Bridgett, therefore, had the burden of proving that the Quitclaim Deed was valid. When a party attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof, she must demonstrate that the evidence establishes that issue as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "In reviewing a 'matter of law' challenge, the reviewing court must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. If there is no evidence to support the finding, the reviewing court will then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id.* (citations omitted). Only if the contrary proposition is conclusively established may we sustain the legal-sufficiency challenge. *Id.*

There is evidence supporting the trial court's finding that Michael did not sign the Quitclaim Deed. The evidence at trial showed that Michael was discharged from a hospital in Ohio

7

on May 7, 2009, after undergoing invasive chest surgery to treat lung cancer, making it unlikely that he would appear in El Paso, Texas, the next day to sign a document he could have signed at home. Michael's credit card receipts showed no charges outside the State of Ohio, and there is no indication that he traveled by car, plane, or otherwise to El Paso on or around May 8, 2009. Bridgett had no idea how Michael came to be in El Paso the day after his surgery. Moreover, the signature on the Quitclaim Deed and the signature on Michael's hospital discharge papers are dissimilar in many respects. Indeed, it appears that the signature on the Quitclaim Deed misspelled Michael's name, spelling it "Micheal." We overrule Bridgett's legal-sufficiency challenge to the trial court's finding that Michael did not sign the Quitclaim Deed himself and that his signature was forged.

When a party challenges the factual sufficiency of an adverse finding on which she had the burden of proof, she must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. The evidence in this case does not preponderate against the trial court's finding that Michael did not sign the Quitclaim Deed as Bridgett asserts. The testimony of interested witnesses that, one day after undergoing invasive chest surgery, Michael traveled to El Paso, Texas, called his sister-in-law with no advance notice and asked her to meet him at a restaurant where he produced a document that already had typed on it the names of people he did not know were going to be there to witness his signature is not sufficiently compelling for us to conclude that the trial court's finding that Michael did not sign the Quitclaim Deed is against the great weight and preponderance of the evidence. In a bench trial, the trial court has the right to accept or reject any part or all of a witness's testimony. *G. Prop. Mgmt., Ltd. v. Multivest Fin. Servs. of Tex., Inc.*, 219 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.). The court may believe

8

one witness and disbelieve others and may resolve inconsistencies in any witness's testimony. *Id.* The trial court could reasonably have disbelieved the events described by the witnesses who claimed that Michael signed the Quitclaim Deed. Therefore, Bridgett's factual-sufficiency challenge also fails. We overrule the fourth and fifth issues.

In her third issue, Bridgett contends she is entitled to judgment in her favor on each of her causes of action because the parties entered into a Settlement Agreement in which, according to Bridgett, the Estate "agreed not to pursue any claims, known or unknown, relating to the administration of the Estate." As an initial matter, the Settlement Agreement does not include a covenant not to sue. Rather, the Estate released any claims arising out of "the Estate-related Disputes," which are defined in the Settlement Agreement as "disputes [which] have arisen between the parties with reference to certain claims made by each of them against the other concerning various matters resulting from or pertaining to the death of Michael L. Henties and the administration of the Estate." Thus, to be an "Estate-related Dispute" for purposes of the Settlement Agreement, the dispute must have been one that had arisen at the time the Settlement Agreement was executed in January 2011. There is no evidence that the dispute over ownership of the Property arose before January 2011 or even before May 31, 2011, when Bridgett recorded the Quitclaim Deed. Even if the dispute over the Property is within the scope of the Settlement Agreement's general release language, Bridgett has provided no authority for her assertion that the release relieved her of her burden of proving that, as she claimed in each of the causes of action included in the petition she filed, the Quitclaim Deed was a valid conveyance. Because we have overruled Bridgett's challenges to the trial court's finding that it was not, she is not entitled to judgment in her favor on any claims

9

that depend on the validity of the Quitclaim Deed. Nor could the Estate have been found to have breached a contract by asserting a counterclaim in this case. First, the only claim the Estate asserted was a counterclaim responsive to Bridgett's request for declaratory relief.[2] Second, it is plain from reading the Settlement Agreement that the Estate did not promise to refrain from filing suit based on any of the released claims. *See Westergren v. National Prop. Holdings, Ltd.*, 409 S.W.3d 110, 142 (Tex. App.—Houston [14th Dist.] 2013, pet. filed) (released parties would only have claim for breach of contract if agreement in question also contained language in which releasing parties agreed not to file suit based on any of released claims). The existence of the Settlement Agreement does not entitle Bridgett to judgment as a matter of law on her claims for breach of contract, declaratory judgment, trespass to try title, or to quiet title. We overrule the third issue.

In her second issue, Bridgett contends that, because the Estate did not plead a cause of action for trespass to try title, its pleadings, consisting of a request for a declaratory judgment, "do not support any judgment regarding the validity of the deed." To the contrary, section 37.007(a) of the Uniform Declaratory Judgments Act expressly provides:

> A person interested under a deed [] may have determined any question of construction or validity arising under the instrument [] and obtain a declaration of rights, status, or other legal relations thereunder.

---

[2] A lis pendens does not constitute a claim of ownership of property. *See* Tex. Prop. Code § 12.007. Rather, it is simply a procedure whereby a party seeking affirmative relief in an action involving title to real property to litigation may put third parties on notice of the existence of the dispute. In the present case, there was no litigation pending at the time the Estate filed the lis pendens. The litigation was initiated by Bridgett, not the Estate.

Tex. Civ. Prac. & Rem. Code § 37.004(a). Moreover, Bridgett's own trespass-to-try-title action provided a proper vehicle for the court's adjudication that she did not have sole ownership of the Property. We overrule the second issue.

In her sixth issue, Bridgett asserts that she was entitled to judgment in her favor on the Estate's claim that she violated the Theft Liability Act because the Quitclaim Deed conveyed her the interest in the Property that she claimed. Because the trial court found that the Quitclaim Deed was a forgery and therefore could not have conveyed Michael's interest in the Property to her, and because we have overruled Bridgett's challenges to this finding, we overrule her sixth issue.

## CONCLUSION

Having overruled each of Bridgett's six appellate issues, we affirm the trial court's judgment.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed: June 3, 2014