# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

NO. 03-22-00239-CV

---

S. W. and M. S., Appellants

v.

Texas Department of Family and Protective Services, Appellee

---

FROM THE 146TH DISTRICT COURT OF BELL COUNTY
NO. 319,539-B, THE HONORABLE CHRISTOPHER L. CORNISH, JUDGE PRESIDING

---

## CONCURRING AND DISSENTING OPINION

Although I agree with the Court that the evidence is legally and factually sufficient to support the district court's finding that termination of Mother's parental rights was in the best interest of the child ("Lily") and that the evidence is legally sufficient to support the district court's finding that Father endangered Lily, I do not agree that the evidence is factually sufficient to support that finding.[1] Accordingly, I concur in the Court's judgment affirming the termination of Mother's parental rights but dissent from its judgment terminating Father's parental rights.

---

[1] I would also conclude that the evidence is factually insufficient to support the district court's finding that Father failed to comply with a court order establishing the actions necessary to regain custody of Lily. *See* Tex. Fam. Code § 161.001(b)(1)(O). However, because the Court limits its analysis to the district court's endangerment findings, I will do the same. *See* Tex. R. App. P. 47.1. Also, because I conclude that the evidence is factually insufficient as to the statutory grounds for terminating Father's parental rights, I need not address whether the evidence is sufficient to support the district court's best-interest finding as to Father. *See id.*

"The United States Constitution and Texas Constitution provide parents due process rights as to the care, custody, and control of their children." *In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (citing U.S. Const. Amend. XIV, § 1; Tex. Const. art. I, § 19). When the Department seeks to involuntarily terminate those rights, its burden of proof at trial is "clear and convincing" evidence. *See* Tex. Fam. Code § 161.001(b); *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018); *A.C. v. Texas Dep't of Fam. & Protective Servs.*, 577 S.W.3d 689, 697 (Tex. App.—Austin 2019, pet. denied). "Clear and convincing evidence" means "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code § 101.007. This is a "high evidentiary burden" that requires a "heightened standard of review." *In re J.F.-G.*, 627 S.W.3d 304, 311 (Tex. 2021). Because "the natural right between parents and their children is one of constitutional dimensions," and termination irrevocably "divests forever the parent and child of all legal rights, privileges, duties, and powers between each other except for the child's right to inherit," "the proceedings below must be strictly scrutinized." *In re G.M.*, 596 S.W.2d 846, 846–47 (Tex. 1980).

"When due process requires the heightened standard for termination of parental rights by clear and convincing evidence, it follows that due process also requires a heightened standard of review of a trial court's finding under section 161.001(b)(1)(D) or (E) . . . because of the potential consequences for parental rights to a different child." *N.G.*, 577 S.W.3d at 235. "[W]hen parental rights have been terminated under either section 161.001(b)(1)(D) or (E), that ground becomes a basis to terminate that parent's rights to other children." *Id*. at 234. Thus, "the collateral consequences of terminating parental rights under section 161.001(b)(1)(D) or (E) are significant." *Id*.

2

Both subsections (D) and (E) require proof of child endangerment, which "means more than a threat of metaphysical injury or potential ill effects of a less-than-ideal family environment." *In re J.W.*, 645 S.W.3d 726, 748 (Tex. 2022); *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Rather, endangerment means "exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being." *A.C.*, 577 S.W.3d at 699 (citing *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). "Subsections (D) and (E) differ in respect to the source of the danger to the child." *J.G. v. Texas Dep't of Fam. and Protective Servs.*, 592 S.W.3d 515, 524 (Tex. App.—Austin 2019, no pet.). Subsection (D) "focuses on the child's environment and may be utilized as a ground for termination when the parent has 'knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child.'" *J.W.*, 645 S.W.3d at 749 (quoting Tex. Fam. Code § 161.001(b)(1)(D)). "In contrast, subsection (E) focuses on danger posed by the parent's conduct." *J.G.*, 592 S.W.3d at 524. "A single act or omission can support termination under subsection (D), but termination under subsection (E) must be based on 'a voluntary, deliberate, and conscious course of conduct.'" *Id*. (quoting *In re M.D.M.*, 579 S.W.3d 744, 764 (Tex. App.—Houston [1st Dist.] 2019, no pet.)).

Here, the Department's case for terminating Father's parental rights on the ground of endangerment rested primarily on Father's drinking alcohol regularly and testing positive for cocaine on two occasions. I would conclude that there was factually insufficient evidence that Father's use of either substance amounted to a "voluntary, deliberate, and conscious course of conduct" that endangered Lily's physical or emotional well-being. Regarding Father's alcohol use, there was evidence of only one incident in which it might have endangered Lily—the removal affidavit indicated that there had been a report alleging that Lily had fallen off the couch

3

and hit her face on the floor while Father was intoxicated. However, the Department investigator observed Lily the following day, and according to the investigator, Lily was "free of any marks or bruising that would indicate a fall within the last 24-36 hours," and Father denied that he was intoxicated while caring for Lily and that any such fall occurred.

Regarding Father's two positive cocaine tests, as I have written before, I do not believe that illegal drug use, standing alone, constitutes sufficient evidence of endangerment. *See D.H. v. Texas Dep't of Fam. and Protective Servs.*, ___ S.W.3d ___, 2021 WL 5098308, at *7 (Tex. App.—Austin Nov. 3, 2021, no pet.) (Triana, J., concurring). Rather, "there must be some evidence of a 'causal connection' between the drug use and the endangerment of the child[]'s physical or emotional well-being." *Id*. (citing *In re L.C.L.*, 599 S.W.3d 79, 86 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (en banc)). Here, Father tested positive for cocaine twice (and only once while Lily was in his care), and the Department failed to present factually sufficient evidence connecting Father's drug use on either occasion to any endangerment to Lily's emotional or physical well-being. *See In re C.V.L.*, 591 S.W.3d 734, 752 (Tex. App.—Dallas 2019, pet. denied) ("While unquestionably an exercise of poor judgment, Father's use of methamphetamines on two occasions, standing alone, does not rise to the level of a conscious course of conduct."); *see also In re C.A.B.*, 289 S.W.3d 874, 874 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[A] single incident of drug use while the child is not in the parent's custody does not support an inference of endangerment."); *cf. D.H.*, 2021 WL 5098308, at *7 (collecting cases in which evidence was sufficient to find endangerment based on drug use in connection with other factors).

I would also conclude that there was insufficient evidence that Father had placed Lily in an endangering environment. Although Father had left Lily in Mother's care

4

unsupervised on one occasion, when, according to Father, Lily was asleep and Father had to pick up his other children from school, there was no indication that Mother had used drugs or otherwise endangered Lily on that occasion. The January 2021 safety plan that was implemented in response to this incident provided that if Father were to leave Lily in Mother's care unsupervised "again," "this would place [Lily] at risk of harm or neglect," and there was insufficient evidence that Father had violated that directive by leaving Lily alone with Mother after the safety plan had been implemented. Additionally, Father denied knowing of Mother's cocaine use or that Mother had been drinking alcohol while she was pregnant with Lily.

Finally, to the extent that the trial court's endangerment finding was based on what the Court describes as Father's "refusing to engage in the processes that might have helped him regain custody," I would conclude that there was insufficient evidence that Father failed to engage in those processes. Although Father did not do everything that the Department asked of him, he completed a psychological evaluation, attended individual counseling, tested negative for illegal drugs throughout most of the case including on all tests taken after September 2021, and attended most of his scheduled visitations with Lily. Father's therapist, although she could not recommend Father's reunification with Lily at this time, did not believe that Father's parental rights should be terminated. She believed that Father's negative drug and alcohol test results indicated that he was "already on the path to recovery" and that he should be given "a little bit of time . . . to live drug and alcohol free."

In sum, when weighing the evidence favoring the trial court's endangerment finding against the disputed evidence not favoring that finding, I conclude that the disputed evidence is so significant that the factfinder could not have formed a firm belief or conviction that Father endangered Lily. Accordingly, I conclude that the evidence is factually insufficient

to support the district court's termination of Father's parental rights. Because the Court concludes otherwise, I dissent from that portion of its judgment. I otherwise join in the Court's judgment.

_____
Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Smith

Filed: October 5, 2022