**Affirmed and Memorandum Opinion filed on July 14, 2016.**



In The

# 𝕱ourteenth Court of Appeals

## NO. 14-16-00072-CV

## IN THE INTEREST OF R.S.S, J.D.S., I.D.S. & K.E.S., CHILDREN

### On Appeal from the 314th District Court
### Harris County, Texas
### Trial Court Cause No. 2014-06481J

## M E M O R A N D U M   O P I N I O N

Appellant, S.V.B., appeals the trial court's final decree terminating her parental rights and appointing the Department of Family and Protective Services (the "Department") as sole managing conservator of her children, R.S.S. ("Robert"), J.D.S. ("John"), I.D.S. ("Ian"), and K.E.S. ("Kevin").[1] In two issues appellant challenges the sufficiency of the evidence to support the trial court's findings under sections 161.001(E) and (O).[2] We affirm.[3]

---

[1] We use pseudonyms to refer to appellant and her children in this case. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8.

[2] The numbering of section 161.001 changed effective September 1, 2015. Section

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Pretrial Removal Affidavit

In April 2012, the Department received a referral alleging neglectful supervision by appellant and the father of the children. Three of their children, Robert, John, and Ian, had been left unsupervised in a car at night in a Walmart parking lot, while appellant and the father went shopping. Appellant and the father were both charged with the offense of child endangerment, and both were placed on three years' deferred adjudication community supervision probation. Following this incident, the children were taken into emergency custody of the Department, which was named Temporary Managing Conservator. Appellant and the father both tested positive for marijuana use at that time. However, they eventually completed their family service plans, and the case was nonsuited in April 2013.

In December 2013, the Department received a new referral, initiating the instant case. The referral alleged physical neglect, physical abuse, and medical neglect of the children by both parents. Specifically, it was reported that both parents had failed to provide for the medical needs of the children. John has a history of seizures, Ian has severe eczema, and Robert has a prosthetic left hand. It was further reported that appellant regularly hit the children hard enough to leave marks and locked them in a bedroom all day while the father was at work. Lastly, it was reported that appellant's home environment was unacceptably dirty and that the father had a problem with drug use.

---

161.001(1) is now section 161.001(b)(1). Act of June 18, 2015, 84th Leg., R.S., ch. 944, § 11, 2015 Tex. Sess. Law. Serv. 3271 (West) (codified at Tex. Fam. Code Ann. § 161.001(b)(1)). Appellant's case is governed by the preceding version, effective January 1, 2011. We refer to the 2011 version in this opinion.

[3] The trial court also adjudicated R.D.S. the father of all four children and terminated his parental rights during the same proceeding; however, he has not appealed the termination.

During the subsequent investigation, investigative worker Michael Ejeh spoke with the police officer who responded to the call at appellant's apartment. According to the officer, appellant's residence was dirty and had no electricity. Appellant claimed her home was dirty because she had thrown a party the day before. Appellant also admitted that she failed to take the children to some of their speech and physical therapy appointments because she and their father had been busy looking for a new apartment. Appellant denied all allegations that she physically abused her children.

On December 17, 2013, appellant and the father both signed a Parental Child Safety Placement agreement to have the children placed with their paternal grandmother. Both parents also agreed, among other things, to participate in Family Based Safety Services. On that date, both parents tested negative for drug use.

In May 2014, appellant went to a psychiatric services clinic because she was suffering from depression; she was prescribed medication to be taken daily.

In September 2014, appellant left the state of Texas and moved to Georgia to live with a man she met online, in direct violation of her probation conditions. Appellant left her children behind in Texas with their paternal grandmother.

On December 2, 2014, the children's paternal grandmother declared she was no longer able to care for the children, noting that children with special needs require a lot of attention. She asked that the children be removed by January 1, 2015. Around this same time, the father tested positive for marijuana use. Appellant had still not returned to Texas.

On December 10, 2014, the Department filed its original petition for termination of the parents' rights to all four children, alleging termination was

warranted with regard to appellant because she:

voluntarily left the children alone or in the possession of another not the parent without expressing an intent to return, without providing for the adequate support of the children, and remained away for a period of at least three months, pursuant to §161.001(1)(B), Texas Family Code;

voluntarily left the children alone or in the possession of another without providing adequate support of the children and remained away for a period of at least six months, pursuant to §161.001(1)(C), Texas Family Code;

knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children, pursuant to §161.001(1)(D), Texas Family Code;

engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to §161.001(1)(E), Texas Family Code;

constructively abandoned the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services or an authorized agency for not less than six months and: (1) the Department or authorized agency has made reasonable efforts to return the children to the mother; (2) the mother has not regularly visited or maintained significant contact with the children; and (3) the mother has demonstrated an inability to provide the children with a safe environment, pursuant to §161.001(1)(N), Texas Family Code; and

failed to comply with the provisions of a court order that specifically established the actions necessary for the mother to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children, pursuant to §161.001(1)(O), Texas Family Code.

4

## B. Trial

### 1. Documentary evidence

Trial to the court was held on December 10, 2015. Prior to any witness testimony, the Department introduced the following into evidence: the citations for service on each parent; the children's birth certificates; the father's paternity tests; certificates containing jurisdiction to demonstrate that none of the children had been the subject of a suit affecting the parent-child relationship in which a judgment was entered on or after January 1, 1974; family service plans for both parents; a status hearing order; drug tests results for both parents; previous judgments against both parents, including appellant's conviction for endangering a child; and a family evaluation of appellant.

The evidence showed appellant was charged in April 2012 with the offense of endangering a child. Specifically, appellant was charged with intentionally and knowingly engaging in conduct that placed a child younger than fifteen years of age in imminent danger of physical impairment by leaving him unattended in a vehicle at night in a shopping center. The criminal trial court deferred adjudication of guilt and placed appellant on community supervision probation for a period of three years. Appellant violated the conditions of her probation when she left the state of Texas to live in Georgia. On December 30, 2014, following a hearing, the court signed a judgment adjudicating appellant guilty and sentenced her to eight months' imprisonment in state jail.

The evidence further showed that in August 2015, shortly after being released from jail, appellant tested positive for cocaine use.

Lastly, the evidence showed that appellant participated in a family evaluation at the Children's Crisis Care Center in September 2015. According to

the evaluation report, admitted into evidence without objection, appellant was cooperative, appropriately dressed, and completed all interview questions. During the evaluation, appellant expressed her love for and commitment to her children. However, the clinician performing the evaluation noted concerns about appellant's history of depression and failure to comply with treatment recommendations as well as appellant's pattern of instability with regard to housing and income. The clinician further expressed concern about the quality of the bond between appellant and the children, especially with the youngest children, Ian and Kevin.

## 2. Testimony

At trial, the Department's caseworker, Melody Victorian, testified that Robert and John, ages five and four, were placed together in a foster home and Ian and Kevin, ages three and two, were placed together in an adoptive home. Victorian further testified that she believed it would be in the best interest of all four children to terminate their parents' rights because of the father's continuous use of cocaine and appellant's inability to provide a stable home for the children as well as her previous incarceration. When the children's paternal grandmother was no longer able to care for the children, the Department attempted to place them with their father; however, he was not suited for placement because he tested positive for illegal drug use. Victorian stated that appellant was in Georgia at this time. Appellant returned to Texas in December of 2014, and proceeded to serve out her sentence in state jail. Appellant was released from jail in July 2015. Victorian testified that the children's father tested positive for cocaine use multiple times during the pendency of the termination suit. However, appellant was only tested for drugs one time after the original petition for termination was filed, and the results came back positive for cocaine use.

Victorian also testified that she believed the children's current placements

are safe and stable and meet the children's needs. Robert and John are slightly delayed educationally, but Victorian believed both children had been potty-trained since entering their foster home. Although the foster parents are not willing to adopt Robert and John, they are willing to care for them long-term until a permanent placement can be found. Victorian also testified to the father's continuing substance abuse.

Child advocate Ashley Tanzy testified she believed termination of the parental rights was in the best interest of the children because of the parents' history with the Department, the parents' ongoing battle with substance abuse, and the failure to complete family services. Tanzy further testified that the children were doing well in their current placements, noting that Robert receives physical, occupational, and speech therapy in his foster home and appears to be improving. Tanzy also stated that the children have said they love appellant and their father very much and that all of the children, particularly John, are very bonded to their father.

Finally, Ian and Kevin's foster father testified that both boys had been in his care since December of 2014 and were thriving. He further testified he and his wife were prepared to adopt Ian and Kevin should the parents' parental rights be terminated. Although financially unable to adopt all four children, the foster father stated he would want Ian and Kevin to maintain a relationship with Robert and John.

Following argument of counsel, the trial court determined appellant's parental rights should be terminated pursuant to the predicate findings under Family Code sections 161.001(1)(E) and (O).[4] The trial court further found that

_____

[4] Although the trial court pronounced the parental rights of both parents terminated pursuant to subsections (E), (N), and (O), the Final Decree only recites predicate findings under

7

termination of appellant's parental rights was in the best interest of the children.

## II.   ANALYSIS

In her first issue appellant argues the evidence was factually insufficient to support the termination finding under section 161.001(1)(E) of the Texas Family Code.[5] Parental rights can be terminated upon proof by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(1) of the Family Code; and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009). Appellant does not challenge the trial court's finding that termination is in the best interest of the children.

### A. Standard of Review

Involuntary termination of parental rights is a serious matter implicating fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *In re D.R.A.*, 374 S.W.3d 528, 531 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Although parental rights are of constitutional magnitude, they are not absolute. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002) ("Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right.").

Due to the severity and permanency of the termination of parental rights, the burden of proof is heightened to the clear and convincing evidence standard. *See* Tex. Fam. Code Ann. § 161.001; *In re J.F.C.*, 96 S.W.3d 256, 265–66 (Tex. 2002). "Clear and convincing evidence" means "the measure or degree of proof that will

---

subsections (E) and (O).

[5] Appellant concedes the evidence is legally sufficient to support a finding under section 161.001(1)(E).

produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This heightened burden of proof results in a heightened standard of review. *In re C.M.C.*, 273 S.W.3d 862, 873 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence, including disputed or conflicting evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. We give due deference to the fact finder's findings and we cannot substitute our own judgment for that of the fact finder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The fact finder is the sole arbiter when assessing the credibility and demeanor of witnesses. *Id.* at 109.

### B. Predicate Termination Grounds

Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's physical and emotional well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.); *see also In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.). In this context, endanger means "to expose to loss or injury; to jeopardize." *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) (quoting *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam)). A child is endangered when the environment creates a potential for danger that the parent is aware of but disregards. *In re S.M.L.*, 171 S.W.3d at 477.

9

Termination under subsection 161.001(1)(E) must be based on more than a single act or omission—the evidence must demonstrate a voluntary, deliberate, and conscious course of conduct by the parent. *In re C.A.B.*, 289 S.W.3d 874, 883 (Tex. App.—Houston [14th Dist.] 2009, no pet.). "Although 'endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." *In re T.N.*, 180 S.W.3d at 383; *see also In re J.O.A.*, 283 S.W.3d at 336 (holding that endangering conduct is not limited to actions directed toward the child). Danger to the child's well-being may be inferred from parental misconduct alone, and courts may look at parental conduct both before and after the child's birth. *Id.* ("[T]he endangering conduct may include the parent's actions before the child's birth, while the parent had custody of older children, including evidence of drug usage."). The conduct need not occur in the child's presence, and it may occur "both before and after the child has been removed by the Department." *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).

The Department contends appellant's criminal history, including her probation violation and subsequent eight-month period of incarceration, her deliberate choice to leave the state and abandon her children, her use of illegal drugs, and her history of instability all support a finding of endangerment under subsection E. Appellant, on the other hand, asserts the evidence is factually insufficient because she had only one state jail conviction with no other arrests and only one positive hair test result for cocaine with no expert testimony to interpret the significance of this result. Appellant further contends the evidence is factually insufficient to establish she intentionally neglected the children's needs.

As a general rule, subjecting a child to a life of uncertainty and instability

endangers the child's physical and emotional well-being. *See In re J.O.A.*, 283 S.W.3d at 345. Although incarceration alone will not support termination, evidence of criminal conduct, convictions, and imprisonment may support a finding of endangerment under subsection E. *See In re A.R.M.*, No. 14-13-01039-CV, 2014 WL 1390285, at *8 (Tex. App.—Houston [14th Dist.] Apr. 8, 2014, no pet.); *In re C.A.B.*, 289 S.W.3d at 886. Likewise, illegal drug use may support termination under subsection 161.001(1)(E) because "it exposes the child to the possibility that the parent may be impaired or imprisoned." *Walker*, 312 S.W.3d at 617. This court has also held that a parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, may support a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being. *In re A.H.A.*, No. 14-12-00022-CV, 2012 WL 1474414 (Tex. App.—Houston [14th Dist.] Apr. 26, 2012, no pet.) (mem. op.).

Contrary to appellant's arguments, the record contains ample evidence of appellant's history of endangering her children. The record shows appellant deliberately left the state while on probation for a previous offense of endangering a child, not only intentionally leaving behind her children but also knowing she would risk imprisonment as a result of violating the conditions of her probation. The record further shows appellant was unable to participate in the initial proceedings in this case, including attending a status hearing and reviewing and signing her family services plan, because she was serving a state jail sentence following the revocation of her probation. In the month following her release from jail, appellant tested positive for cocaine use, during the pendency of this termination suit.

Moreover, prior to trial, appellant participated in a family evaluation at the Children's Crisis Care Center; this evaluation report was admitted into evidence at

trial without objection. In addition to detailing appellant's history with the Department as well as her mental health and drug use histories, the report contains informed clinical impressions, including concerns about the quality of the bond between appellant and her children as well as about appellant's ability to be compliant with medication prescribed for ongoing bouts of depression.

Based on the record before us, we conclude a reasonable fact finder could have formed a firm belief or conviction that appellant engaged in conduct that endangered the physical or emotional well-being of the children. *See, e.g.*, *In re A.R.M*, 2014 WL 1390285, at \*7–9; *In re C.A.B.*, 289 S.W.3d at 886–87. We hold that the evidence supporting termination under Family Code section 161.001(1)(E) is factually sufficient. Having concluded that the evidence is factually sufficient to support the trial court's finding of endangerment under section 161.001(1)(E) of the Texas Family Code, we need not discuss appellant's issue challenging the court's finding under section 161.001(1)(O). Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Appellant does not challenge the court's finding that termination was in the children's best interest.

Accordingly, we overrule appellant's first issue.

The judgment of the trial court is affirmed.


/s/    John Donovan
       Justice


Panel consists of Justices Busby, Donovan, and Wise.

12