

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00430-CV

**IN THE INTEREST OF N.R.G.**

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-PA-00683
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by: Liza A. Rodriguez, Justice

Sitting: Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: November 13, 2019

AFFIRMED

Appellant Jennifer W.[1] appeals the trial court's order terminating her parental rights to her nine-year-old daughter, N.R.G. After a bench trial, the trial court terminated Jennifer W.'s parental rights based on subsections (E), (N), (O) and (P) of section 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1). The trial court also found that termination of her parental rights was in the best interest of her child. *See id.* § 161.001(b)(2). On appeal, she argues the evidence is legally and factually insufficient to support the trial court's best-interest finding. We affirm.

---

[1] To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

In reviewing the legal sufficiency of the evidence to support the trial court's best-interest finding, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, a court should consider the factors set out in section 263.307 of the Family Code. *See* TEX. FAM. CODE ANN. § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a court may also consider the nonexclusive list of factors set forth by the Texas Supreme

---

[2] These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE ANN. § 263.307(b).

Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a court may judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

The evidence at trial shows that the Department filed suit to terminate Jennifer W.'s parental rights as a result of Jennifer W. fleeing the scene of a car accident in which she was the driver and N.R.G. was the passenger. Jennifer W.'s brother, Nicholas G., testified that on the night of March 15, 2018, he received a phone call from Jennifer W. stating that she had been involved in an accident and asking him to come and get her and N.R.G. According to Nicholas G., when he arrived, N.R.G. ran into his arms crying. She had marks on her ankles and across her stomach. Nicholas G. testified that Jennifer W. had "a bunch of little marks" all over her face, which appeared to have been caused by glass shattering in the accident. N.R.G. told him that she had woken up in the car when her mother made her get out and hide in the woods. Nicholas G. testified that based on his observations of Jennifer W. that night, he believed she had been drinking. He picked up N.R.G. and put her in his car, leaving Jennifer W. "[w]here she was." Nicholas G. testified he did not take N.R.G. to the hospital because he "examined her very thoroughly and sent messages to CPS." He explained that he "had no rights to [N.R.G.] at the time of the accident." When asked if Jennifer W. had ever told him whether she had been drinking that night, Nicholas

---

[3] These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

G. replied that Jennifer W. had admitted to drinking. She told Nicholas G. that she had left the scene because she did not have a license to drive.

At trial, the caseworker testified that Jennifer W. had a substance abuse problem and that she continued to use illegal substances during the pendency of this case. Although the evidence was somewhat unclear as to whether Jennifer W. admitted to having "relapsed" sometime during October or November of 2018, a hair-follicle test in April of 2019 was positive for methamphetamines. The caseworker also testified that Jennifer W. refused to submit to drug testing on multiple occasions during the pendency of the case. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [the mother's] failure to submit to the court-ordered drug screening indicated she was avoiding testing because she was using drugs."); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) ("The jury could reasonably infer that appellant's failure to complete the scheduled screenings indicated she was avoiding testing because she was using drugs."). Based on this information, the caseworker believed that Jennifer W. was unable to address her substance-abuse problem.

Further, the Department presented evidence that although mom had a regularly scheduled day and time to visit with N.R.G., out of fifty-two scheduled visits with her daughter, Jennifer W. attended only sixteen, which the caseworker testified upset N.R.G. When asked whether Jennifer W. had any excuses as to why she did not attend these visits, the caseworker replied Jennifer W. "would often state that she had other issues going on–that this was a lot for her." The caseworker noted that Jennifer W. never claimed her missed appointments were because of transportation issues. Notably, although both the caseworker and Nicholas G. testified Jennifer W. knew of the trial setting, she did not appear at trial. Finally, the Department presented evidence that Jennifer

W. did not have stable and safe housing. According to the caseworker, throughout the case, Jennifer W. lived with friends and more recently said she was going to Haven for Hope.[4]

With regard to N.R.G.'s current placement, the Department presented evidence that N.R.G. was "doing great" and was "very happy" in the care of Nicholas G., her maternal uncle. The caseworker testified Nicholas G. had a safe and stable home. N.R.G. was making good grades at school and was involved in many activities. She was bonded with Nicholas G. and was very happy living in his home. Although the record is void as to N.R.G.'s feelings about her relationship with mom, when the caseworker asked N.R.G. whether she would like to be adopted by Nicholas G., N.R.G. replied that it would be "amazing." Nicholas G. testified that N.R.G. is doing wonderfully, is very comfortable in his home, and considers him a father figure. According to Nicholas G., he attends every school function and supports N.R.G. fully. When asked whether he had told his sister, Jennifer W., about the trial setting, Nicholas G. replied he had, and "[s]he said that she wasn't sure if she was going to be able to make it." She said she "was trying to get into an inpatient rehab." Nicholas G. testified that she had also left a voice message the morning of trial, stating "that if the court ends up ruling adoption by a family member, she's okay with it."

In her brief, Jennifer W. relies on the following fact to show the evidence is legally and factually insufficient to support the trial court's best-interest finding: after the accident, "it was [Jennifer W.] who arranged for [Nicholas G.] to pick up the child." Jennifer W. claims, "It appears this was a very good decision by [Jennifer W.] and in the child's best interest." While Jennifer W. did call Nicholas G. to pick up N.R.G. after the accident, there was also evidence that she was drinking and driving without a license while her child was a passenger in the car. Considering the entire record, we hold the evidence is legally and factually sufficient to support the trial court's

---

[4] Haven for Hope is a local shelter for displaced individuals.

finding that termination of Jennifer W.'s parental rights is in the child's best interest. *See In re M.R.*, 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.) (holding that evidence of "[a] parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support[s] a finding that termination is in the best interest of the child"). We therefore affirm the trial court's order terminating Jennifer W.'s parental rights.

Liza A. Rodriguez, Justice