

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00118-CV

**IN THE INTEREST OF X.T.** and L.T.

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2020-PA-02021
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Luz Elena D. Chapa, Justice
                 Irene Rios, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: June 29, 2022

AFFIRMED

Appellant Mother[1] appeals from the trial court's order terminating her parental rights to her children. To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Texas Department of Family and Protective Services has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b)(1), (2). On appeal, Appellant Mother argues the evidence was legally and factually insufficient to support the trial court's finding that termination

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

of her parental rights was in her children's best interest. She also argues the trial court abused its discretion in making its conservatorship finding. We affirm.

In reviewing the legal sufficiency of the evidence, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (citation omitted). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (citation omitted). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id*. at 346.

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a

---

[2]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the

factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28.

This case proceeded to a bench trial on February 3, 2022. The evidence at trial showed that in October 2020, nine-year-old X.T. and eight-year-old L.T. were removed from Appellant Mother's care based on allegations of drug use in the residence and the children being left home alone. The caseworker testified that in October 2020, she went over the service plan with the parents at a family group conference. Nevertheless, Appellant Mother did not begin to engage in services until April 2021. The service plan required, among other things, that Appellant Mother engage in individual counseling and drug treatment. The caseworker testified that Appellant Mother was unsuccessfully discharged from individual counseling for failing to engage. According to the caseworker, Appellant Mother missed multiple appointments and gave no explanation for missing these appointments. At trial, Appellant Mother claimed the counselor told her she had completed her individual counseling. As factfinder, the trial court could have found the

---

child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[3]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

caseworker's testimony to be credible and Appellant Mother's testimony to not be credible. *See In re J.O.A.*, 283 S.W.3d at 346 (explaining the factfinder is the sole judge of the weight and credibility of the evidence).

The evidence at trial also showed that Appellant Mother's drug treatment plan required her to submit to random drug testing. The first hair follicle test Appellant Mother provided in June 2021 was positive for amphetamines and methamphetamines. The caseworker testified Appellant Mother was supposed to continue random drug screening. However, although the caseworker asked Appellant Mother to submit to drug testing "six, seven times," she failed to do so. Further, the caseworker testified that at the last court hearing before the trial setting (October 21, 2022), Appellant Mother was ordered by the trial court to submit to testing by the end of that day. Indeed, the clerk's record reflects that the trial court's October 21, 2021 order required Appellant Mother to submit to a hair follicle test by "close of business on October 25, 2021." The caseworker testified at trial that Appellant Mother failed to submit to testing as ordered. When asked at trial about her missed drug tests, Appellant Mother claimed to have only seen "one text message about the drug test from the caseworker." She then admitted that during one drug test, she gave a urine sample but left before submitting a hair follicle, testifying that she "didn't see the point in doing a UA and a hair follicle." Further, Appellant Mother claimed at trial that she was not struggling with her sobriety. As factfinder, the trial court could have found the caseworker's testimony to be credible and Appellant Mother's testimony to not be credible. *See In re J.O.A.*, 283 S.W.3d at 346 (explaining the factfinder is the sole judge of the weight and credibility of the evidence). Further, based on the evidence, the trial court could have reasonably inferred that Appellant Mother's failure to appear for drug testing indicated that she was avoiding testing because she was using drugs. *See In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("A factfinder reasonably could infer that [mother's] failure to submit to the court-ordered drug

screening indicated she was avoiding testing because she was using drugs."); *In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) ("The jury could reasonably infer that appellant's failure to complete the scheduled screenings indicated she was avoiding testing because she was using drugs.").

With regard to visitation, the caseworker testified Appellant Mother had been inconsistent, which had negatively affected the children, in particular X.T. The caseworker testified that between April and October 2021, Appellant Mother had been engaging in services and visiting the children. During that period of time, X.T. "was doing great in school" and was not having "as many issues." However, beginning in October 2021, the caseworker testified that Appellant Mother "started to fall off in the case and the visits started to become inconsistent." Appellant Mother's last visit with the children was November 2021. According to the caseworker, "with the decrease and inconsistency of the visits," X.T. started "to act out more at school [and] at home." To address these concerns, he "is in individual counseling outside of school, as well as . . . in school." The caseworker testified that Appellant Mother's "lack of consistent visitation [was] starting to show [through] the kids' behavior. When [Appellant Mother] is visiting, their behaviors are better. But if we can't keep that consistency for the kids, then it becomes harmful for them."

Since December 2020, the children have been placed with a relative who testified she would like to adopt the children to give them "peace of mind" and "permanency." The placement testified she talks to the parents daily on the telephone. According to the placement, the children ask morning and evening to talk to their parents—it is always the children who initiate the phone calls. The placement testified Appellant Mother had not been consistent in seeing the children, and the last time she saw them was November 9, 2021. The placement testified the children are "settled" in her home, have a routine, and are doing well. According to the placement, even if the

parents' rights are terminated, she plans to allow the parents to have a relationship with the children.

With respect to financial support, the placement testified that the parents have paid for the children's cell phone bills; however, there were "a few months" that the children's phones were not working. The placement testified the parents had recently, in January 2022, paid for both of the children's phones "to be turned back on." The placement also testified that in the beginning of the case, the parents sent her $200 so she could take the kids to Chuck E. Cheese. Appellant Mother also bought school clothes and school supplies for the children in the fall of 2020. According to the caseworker, Appellant Mother had provided minimal financial support for the children during this case. Appellant Mother admitted at trial that she had not provided any financial support since December 2020.

The caseworker further testified that she had not been able to maintain contact with Appellant Mother since October 21, 2021. In addition to attempting to reach Appellant Mother via her last known telephone number, the caseworker mailed a letter to Appellant Mother's last known address and reached out to the placement. The caseworker also went to Appellant Mother's last two known addresses. The caseworker testified her phone number had not changed and Appellant Mother could have called her at any point during the case. At trial, Appellant Mother claimed that she did not know she was supposed to maintain contact. When asked why she had not reached out to the caseworker, Appellant Mother claimed she did not receive every text and phone call on her cell phone, which was why she had changed her cell phone carrier and number.

The caseworker further testified Appellant Mother had not shown stable housing or employment. The caseworker testified that Appellant Mother's last known address was a friend's residence. At trial, Appellant Mother testified she was living at a hotel on a month-to-month basis. When asked if she was at that hotel the morning of trial, Appellant Mother testified she had not

been at the hotel and was instead at the children's father's house. With respect to employment, Appellant Mother testified she had been working at Vision Works until she got Covid. She claimed to now be working for Uber Eats. The caseworker testified Appellant Mother had not given any proof of employment.

In reviewing all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant Mother's parental rights was in her children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. There was evidence from which the trial court could have reasonably concluded that Appellant Mother had not addressed her sobriety during the pendency of the case, did not have stable housing or employment, and was inconsistent in visiting her children, which had negatively impacted them. Based on the above evidence the trial court could reasonably conclude Appellant Mother is incapable of meeting her children's financial and emotional needs. The trial court could have also reasonably concluded the children's placement was meeting their emotional and financial needs, now and in the future.

With regard to factual sufficiency, we note there was evidence of a loving bond between Appellant Mother and her children. However, given the other evidence presented, we conclude the evidence is factually sufficient that termination of her parental rights was in her children's best interest. *See id*. at 345.

In her final issue, Appellant Mother argues if the trial court's termination order is reversed on appeal, the trial court's conservatorship order should also be reconsidered. However, we have determined the trial court did not err in terminating Appellant Mother's parental rights. Thus, Appellant Mother's argument has no merit. *See In re C.J.Y.*, No. 04-20-00009-CV, 2020 WL 3441248, at *7 (Tex. App.—San Antonio June 24, 2020, pet. denied); *see also In re M.R.D.*, No. 04-19-00524-CV, 2020 WL 806656, at *9 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied)

(holding that because the trial court did not err in terminating appellant's rights, appellant no longer had any legal rights to her children and could not challenge the portion of the termination order that related to the appointment of conservators); *In re L.T.P.*, No. 04-17-00094-CV, 2017 WL 3430894, at * 6 (Tex. App.—San Antonio 2017, pet. denied) (same).

We affirm the trial court's order terminating Appellant Mother's parental rights.

Liza A. Rodriguez, Justice