

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00242-CV

**IN THE INTEREST OF A.S.F.**, J.J.S., A.L.A., and N.M.W.

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2020PA01930
Honorable Charles E. Montemayor, Associate Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Patricia O. Alvarez, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: August 3, 2022

AFFIRMED

Appellant Mother[1] appeals from the trial court's order terminating her parental rights to her children. She argues that the evidence is legally and factually insufficient to support the trial court's finding that termination was in her children's best interest. She also argues that the trial court abused its discretion in appointing the Department of Family and Protective Services as the permanent managing conservator of the children. We affirm.

### BEST INTEREST

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child. *See* TEX. FAM. CODE § 161.001(b)(1), (2). Here, Appellant Mother does not contest the trial court's finding that she violated predicate grounds (N), (O), and (P). She contests only the trial court's best-interest finding pursuant to section 161.001(b)(2), arguing that the finding is not supported by legally and factually sufficient evidence.

In reviewing the legal sufficiency of the evidence, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (citation omitted). In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (citation omitted). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id.* at 346.

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307. *See* TEX. FAM. CODE § 263.307(b).[2] In addition to these statutory factors, in considering the best interest of the child, a

---

[2]These factors include (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the Department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the

factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976).[3] The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). In determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest. *In re C.H.*, 89 S.W.3d at 28.

The children the subject of this suit are ten-year-old A.F., seven-year-old J.S., four-year-old A.A., and two-year-old N.W. On March 14, 2022, this case was tried to the bench. Appellant Mother did not appear at trial.

Rachel Kotowsky, a Department caseworker, testified that the intake for this case was on September 29, 2020 for the neglectful supervision of then five-year-old J.S., who was found asleep alone in a car at a gas station. At the time of the incident, Appellant Mother was incarcerated. According to Kotowsky, the Department had concerns about Appellant Mother's drug use,

---

child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with: (A) minimally adequate health and nutritional care; (B) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (C) guidance and supervision consistent with the child's safety; (D) a safe physical home environment; (E) protection from repeated exposure to violence even though the violence may not be directed at the child; and (F) an understanding of the child's needs and capabilities; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

[3]These factors include, but are not limited to, the following: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the child's best interest; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions that may indicate the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013) (citing *Holley*, 544 S.W.2d at 371-72).

specifically methamphetamine use, and possible domestic violence between Appellant Mother and her partner. Kotowsky testified a service plan was created and Appellant Mother was court ordered to complete a psychological evaluation with individual counseling; to undergo a drug assessment and random drug testing; to complete any recommended drug treatment; to complete parenting and domestic violence prevention classes; and to secure housing and employment. Kotowsky testified all the above services were set up for Appellant Mother; however, Appellant Mother did not complete any of the services. According to Kotowsky, Appellant Mother may have started drug treatment, but she never completed it. Kotowsky testified that Appellant Mother was sent for drug testing twenty-three times but only underwent testing twice. Both tests were positive. When asked whether Appellant Mother gave excuses for not completing her services, Kotowsky testified that Appellant Mother gave different reasons. "She had stated that she had not had any contact with the services, that she did not have transportation, or that she was out of town."

Kotowsky testified that Appellant Mother did participate in some parent-child visits: "Some of the visits were appropriate; some of them were not." According to Kotowsky, Appellant Mother acted inappropriately during some visits when she promised the children that they were coming home, which was particularly harmful to A.F. Kotowsky testified that she was unable to assess Appellant Mother's home to see if it was appropriate for the children because Appellant Mother did not provide any information about the residence in which she was residing. Kotowsky also testified that Appellant Mother did not provide any proof of employment. According to Kotowsky, the only financial support Appellant Mother provided to her children during the pendency of the case were some gifts to the children for birthdays and Christmas.

Kotowsky testified that the last time she had contact with Appellant Mother was via a text message in January 2022, two months before trial. Kotowsky encouraged Appellant Mother to

complete her services and inquired into whether they could meet. Kotowsky testified that Appellant Mother said she could not meet because she did not have transportation.

Kotowsky testified that while she was the caseworker, A.F. and N.W. were placed together in the same foster home. J.S. and A.A. were placed in separate foster homes. Kotowsky testified the foster homes were meeting the needs of the children. Further, A.F. and J.S. had specific academic needs that were being addressed while in foster care.

Crystal Jones, a Department caseworker, testified she was assigned to this case in February 2022. Her last contact with Appellant Mother was the morning of trial when Appellant Mother "wanted to confirm that court was set for today." Jones testified she gave Appellant Mother the time and confirmed trial was set for that day. Jones testified she did not give Appellant Mother the Zoom information, but Appellant Mother had received that information at a previous hearing.

Jones testified that during her time on the case, Appellant Mother had not completed any services. According to Jones, when she first met with Appellant Mother, Appellant Mother said she had completed all her services. However, when Jones asked for certificates showing completion, Appellant Mother said she did not have any certificates. Jones was then asked about the reasons Appellant Mother gave for not completing her services. Jones replied that with regard to drug testing, Appellant Mother said she was in the process of moving. Jones testified that Appellant Mother had visited the children but, like Kotowsky, Jones testified Appellant Mother had engaged in inappropriate conduct during the visits. According to Jones, after some of the visits, the children said "they would be going home or [were] promised certain things that they didn't get."

Jones testified the children are currently placed in four separate foster homes. N.W. has been placed in her foster home with a sibling who was not part of this case, and her foster home would like to adopt her. A.A. has also been placed in a foster-to-adopt home. Jones testified the

Department is continuing to look for placements for J.S. and A.F. that will lead to permanency for them. Jones testified the children are able to see each other. Both caseworkers testified that the foster homes were meeting the children's needs.

In reviewing all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Appellant Mother's parental rights was in her children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344. There was evidence that during the pendency of this case, Appellant Mother had only undergone drug testing twice out of twenty-three requested times. The two times she did test produced positive results. Further, the trial court could infer that Appellant Mother failed to submit to drug testing the other times because she was using illegal drugs. *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) ("The jury could reasonably infer that appellant's failure to complete the scheduled screenings indicated she was avoiding testing because she was using drugs."); *see also In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (same). There was testimony that Appellant Mother had not provided proof of stable housing or employment. Nor had she shown that she had completed the services ordered by the court. There was also evidence that she had inappropriate visits with her children by promising them they would be able to return to her care. Finally, there was testimony that although Appellant Mother had confirmed the date and time of trial with Jones the morning of trial, she failed to appear. Based on the above evidence the trial court could reasonably conclude Appellant Mother is incapable of meeting her children's financial and emotional needs at this time. The trial court could have also reasonably concluded the children's placements were meeting their emotional and financial needs and that the Department would ensure the children's needs were met in the future. We therefore hold the evidence is legally sufficient to support the trial court's best-interest finding.

With regard to factual sufficiency, we note that the children have been placed in separate foster homes and only two of those homes wish to adopt. However, given the other evidence presented, we conclude the evidence is factually sufficient that termination of her parental rights was in her children's best interest. *See In re J.O.A.*, 283 S.W.3d at 345.

### CONSERVATORSHIP

In her final issue, Appellant Mother argues if the trial court's termination order is reversed on appeal, the trial court's conservatorship order should also be reconsidered. However, we have determined the trial court did not err in terminating Appellant Mother's parental rights. Thus, Appellant Mother's argument has no merit. *See In re C.J.Y.*, No. 04-20-00009-CV, 2020 WL 3441248, at *7 (Tex. App.—San Antonio June 24, 2020, pet. denied); *see also In re M.R.D.*, No. 04-19-00524-CV, 2020 WL 806656, at *9 (Tex. App.—San Antonio Feb. 19, 2020, pet. denied) (holding that because the trial court did not err in terminating appellant's rights, appellant no longer had any legal rights to her children and could not challenge the portion of the termination order that related to the appointment of conservators); *In re L.T.P.*, No. 04-17-00094-CV, 2017 WL 3430894, at * 6 (Tex. App.—San Antonio 2017, pet. denied) (same).

### CONCLUSION

We affirm the trial court's order terminating Appellant Mother's parental rights.

Liza A. Rodriguez, Justice